STATE OF MAINE

*vs.*

WILLIAM M. MANN

Oxford.    Opinion, October 22, 1948.

*Robert T. Smith, County Attorney,* for the State.

*Theodore Gonya,* for respondent.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

FELLOWS, J. This case is before the Law Court on respondent's exceptions to the charge of the presiding justice. In addition to the five portions of the charge complained of, the bill of exceptions makes the complaint, warrant, docket entries, report of evidence, and the entire charge a part of the bill. The exceptions are overruled.

The respondent was first tried and found guilty in the Norway Municipal Court upon complaint of operating a motor vehicle on a public highway while under the influence of intoxicating liquor. Upon appeal he was again tried in the Superior Court for Oxford County, and the jury returned a verdict of guilty.

The record shows that the state's case was based upon the testimony of a state police officer who made the arrest in the evening of June 17, 1947, and the testimony of a deputy sheriff who saw respondent at the time of arrest. This evidence for the state consisted of the identification of respondent as driver, the general appearance and actions of respondent indicating an intoxicated condition, manner of talking and statements made by respondent, opinions of the officers, and the physical tests made. The defense consisted of testimony of the respondent (who admitted taking three drinks that evening at a dinner some time before arrest),

who denied that he was under the influence, and also the testimony of two men (who had been with the respondent that evening) who denied that respondent was or appeared to be under the influence of liquor.

At the conclusion of the charge of the justice presiding the respondent excepted to certain portions, which he claims were erroneous and prejudicial.

### Exception 1

"You have in this case the opinion of Mr. Conant, and the opinion of another officer, the man at the jail, as to the man's condition. Mr. Conant is a police officer, a state police officer, employed, like many others, by the state to enforce the laws, to see that the general public in its proper and legal use of the highways is protected by those who ignore or violate the law. Mr. Conant tells you and gives it as his opinion that the man, the respondent here, was under the influence of intoxicating liquor."

### Exception 2

"The jail keeper, another officer, a deputy sheriff of this county, sworn to uphold the laws of this state, tells you that in his opinion this respondent was under the influence of intoxicating liquor when he was brought to the jail. Does he know what he is talking about? Has he had that experience, which is that of an ordinary officer, to judge the condition of people and judge the condition of this respondent?"

The respondent complains that the foregoing extracts from the charge were indirect "expressions of opinion" as to the credibility of the witnesses, and placed "a judicial halo over the heads of the two officers." We fail to see that these comments of the presiding justice were erroneous, even standing alone, and they certainly were not erroneous or prejudicial when the whole charge is examined and considered. *State* v. *Jones*, 137 Me. 137; 16 A. (2nd) 103; *Benner* v. *Benner*, 120 Me. 468; 115 A. 202. There was no

"obvious attempt to suggest the honesty of the law enforcement officers, as distinguished from the interest of the respondent" as in *State* v. *Brown,* 142 Me. 106; 45 Atl. (2nd) 442, 445; nor is there a direct or indirect expression of opinion as prohibited by R. S. 1944, Chap. 100, Sec. 105. The province of the jury to pass upon credibility was not interfered with. *State* v. *Smith,* 140 Me. 44; 33 A. (2nd) 718. There were no argumentative comparisons, as appear in the cases cited by respondent: *Strader* v. *United States (CCA),* 72 Fed. (2nd) 589; *Minner* v. *United States (CCA),* 57 Fed. (2nd) 506. It does not follow that there is an expression of opinion because interrogatories were addressed to the jury. *State* v. *Day,* 79 Me. 120, 125; 8 A. 544; *State* v. *Matthews,* 115 Me. 84; 97 A. 824. There was no speaking in a manner implying that the words were "entitled to obedience." *State* v. *Jones,* 137 Me. 137, 140; 16 A. (2nd) 103. In fact, the complete charge appears to be an impartial and judicial statement by the justice who presided, of conflicting claims made by capable attorneys for the state and the respondent. The jurors were left free to use their own judgment as to all matters of fact, and were so instructed. Whatever the emphasis, or whatever the tone, used by the presiding justice, it cannot now be known or considered. If the respondent felt that the justice in his charge "spoke daggers," the record discloses that there were no "daggers" used.

## Exception 3

"This law was enacted, Mr. Foreman and members of the panel, for the protection of the men and women and children who are legally and properly upon the highways. These laws were enacted and placed on the statute books to protect the general public, you and I, and we have no option but to take the law as we find it."

This instruction was not improper. It was not argumentative. It stated only what is well known to every person. It was also proper notice to some unreasoning or thought-

less juror, who might be inclined, for personal reasons, to dislike the law, that its enactment was a vital necessity.

## Exception 4

"It is important again that you should agree, whatever your verdict may be, so that when you come into this court there will be a unanimous verdict, as there must be, in order to settle the case finally. That is why you are allowed, Mr. Foreman and members, to retire to your room by yourselves with no one else present to discuss the case which you have heard. It may be it has made different impressions on different individuals on the jury. You should sit down as reasonable men and women and if there is any difference of opinion try to reconcile your opinions; try to see the other person's point of view, so that you will finally agree on a verdict and bring it into this court and end once and for all the litigation that is involved; because if you fail to agree, Mr. Foreman and members of the panel, at some other term of court before another jury, the same facts must be presented to them for settlement, to men and women who are not any better qualified than you are to settle the question. So you should, if there is a disagreement, discuss it with an open mind and attempt to reach a conclusion so that you will bring into court, as I said, a unanimous verdict."

The respondent's attorney in his brief admits that "There is no quarrel with the language used or the thoughts expressed. In the abstract, it is probably sound. The complaint is that the instruction was premature. There was nothing to indicate that this jury would not agree on a verdict." The court sees no force in this claim. The record shows this to be the first case tried during the term, and it has long been considered not only proper but necessary for the presiding justice to fully instruct jurors on their responsibilities and duties, either by a separate statement made at the commencement of the term, or by inclusion in the first charge, as was done here.

310

## Exception 5

"The charge here is that on the 17th of June the respondent operated his car while under the influence of intoxicating liquor; not that he was intoxicated; the charge is under the influence of intoxicating liquor. Our statute says, 'or at all under the influence of intoxicating liquor' and I am not going beyond that for a definition, Mr. Foreman and members of the panel, because if we discussed that angle, if I did or attempted to, having in mind all that has been said about it by different people who pretend to know, you and I would be in trouble and be confused. At all under the influence of intoxicating liquor is as plain English as anybody can use; plain English that anyone can understand. At all means at all, no matter how little. That is the charge against this respondent, and the state must satisfy you to a reasonable certainty that the respondent is guilty."

The respondent contends that this instruction was ambiguous, confusing and erroneous because it attempts "to distinguish between a state of intoxication and a state of being under the influence." The respondent says "there is no distinction between the two states."

The Legislature has, however, recognized that there is a difference. The statute says that a person is guilty of the offense if he operates, or attempts to operate, a motor vehicle "when intoxicated or at all under the influence of intoxicating liquor or drugs." R. S. 1944, Chap. 19, Sec. 121.

The word "intoxicated" is a synonym for "drunk." "Intoxicated" commonly and usually means inebriated to such an extent that the mental or physical faculties are materially impaired. While the difference may be only in the degree of impairment, the expression "at all under the influence" means simply what the words themselves say. "At all" has been defined as "in any way or respect" or "to the least extent or degree." See Webster's New International Dictionary, "intoxicated," "all"; State v. Taylor, 131 Me. 438, 441; 163 A. 777.

The opinions of courts in other states are of but little or no assistance, because the statutes are not identical. If there be any need beyond the words themselves to more fully explain the intention of the Maine Legislature, an examination of the original law and amendment thereto clearly show the legislative purpose. In R. S. 1916, Chap. 26, Sec. 38, the prohibition was in operating a motor vehicle "while under the influence of intoxicating liquor, so that the lives or safety of the public are in danger." This plainly did not meet the public necessity, for the reason that a jury too often had a difficult time to measure the extent of the liquor influence that would endanger. The attempts to prove the number and kind of drinks taken, the times when taken, and the lack of ability of the operator to carefully drive his car, usually failed. It is common and universal knowledge that individuals are affected in different manner and degree by amounts of liquor taken, and by their own physical condition at the time. Where a single drink might render one person "under the influence" to a noticeable degree, several drinks would not apparently affect another in any degree. It was therefore determined by the Legislature that the law be amended so that a jury need not measure the "capacity" of the automobile operator, and would not be obliged to find the dangerous extent of the liquor influence upon his abilities to properly operate his car. The amendment was also to avoid the common acceptance of "intoxicated,"—that the width of the way is of more importance to the intoxicated individual than the length.

Chap. 211, Sec. 14, P. L. 1919, changed the then existing statute and covered the condition of being "intoxicated" or "at all under the influence of intoxicating liquor." No matter how little the mental or physical faculties and abilities may be affected, if they are in fact affected, the law of "at all under the influence" now applies. The burden is of course upon the state to prove beyond a reasonable doubt that the car operator was *to some extent* under the influence of intoxicating liquor. This was so stated in the charge.

"The condition that makes a driver, under the influence of intoxicating liquor or drugs, a menace to the traveling public, is not only a lessening of his mental alertness, or an exhilaration thereof, but as well any weakening or slowing up of the action of his motor nerves, interference with the coordination of sensory and motor nerves, which may cause sluggishness where quickness of action is demanded." *Barnes, J. in State* v. *Taylor,* 131 Me. 441; 163 A. 777, 778.

All thoughtful citizens recognize this extraordinary and killing danger due to a motor vehicle whose operator is "intoxicated" or "at all" under the influence of liquor or drugs, and the statute should be interpreted to protect, so far as may be, every person lawfully upon the highway. The court finds no error in the instruction that "at all means at all, no matter how little."

The court fully realizes the importance of this case both to the respondent and to the state. It has carefully read and studied the briefs of counsel, the bill of exceptions, the evidence, and the whole charge. We do not hesitate to say that the complete record bears convincing witness to a fair trial and a just verdict.

*Exceptions overruled.*