COMMONWEALTH *vs.* FREDERICK ROLLINS.

Bristol.  October 7, 1968. — October 31, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, &
REARDON, JJ.

*Practice, Criminal,* Nolle prosequi, Double jeopardy, Deliberation of jury, Charge to jury. *Homicide. Evidence,* Admissions and confessions.

One indicted was not placed in legal jeopardy where a nolle prosequi was entered before the empanelling of a jury, and the nolle prosequi did not operate as an acquittal of the crime charged in the indictment. [632–633]

Where, before the empanelling of a jury, a nolle prosequi was entered with respect to so much of an indictment for murder as charged murder in the first degree and the defendant filed a plea of guilty of second degree murder and was sentenced therefor, and subsequently his motion to vacate the sentence and to retract his guilty plea was allowed and a second indictment for murder of the same victim was returned, to which the defendant filed a plea of not guilty, there was no merit in his contention that "fundamental justice" required allowance of a motion by him to dismiss so much of the second indictment as charged murder in the first degree, and the motion was properly denied. [633]

Conflicting evidence at the trial of an indictment for murder by shooting warranted a conclusion that the defendant, for at least fifteen minutes during which he left a cafe, where he had been drinking and had been subjected to a judo or karate demonstration by the victim, went to his house, and returned to the cafe with a loaded rifle, had an intention to shoot the victim and was guilty of first degree murder when he did so upon his return, or a conclusion that the defendant was so drunk that

---

the malice aforethought with which the killing was committed was not "deliberately premeditated" and he was guilty of murder in the second degree only, or a conclusion that, if the defendant was attacked by the victim, the killing was committed in the heat of sudden affray or combat and the defendant was guilty of manslaughter only [634–635]; the record of the case did not persuade this court upon review under G. L. c. 278, § 33E, as amended by St. 1962, c. 453, to d'rect the entry of a verdict of a lesser degree of guilt than the verdict of guilty of murder in the second degree returned by the jury [635].

At the trial of an indictment for murder by shooting in a cafe in which the defendant had been drinking, statements to police officers by him immediately after the shooting were properly admitted on evidence that the defendant had not been questioned, or permitted to speak, until the warnings required by *Miranda* v. *Arizona*, 384 U. S. 436, had been given, that he had been afforded opportunity to use a telephone, that he had been sufficiently sober to understand the warnings and to make an intelligent decision to answer questions despite the warnings, and that he made intelligent, sensible responses to questions, although he had been subdued and beaten by bystanders after the shooting. [635–636]

Discussion of the charge to the jury approved in *Commonwealth* v. *Tuey*, 8 Cush. 1, and *Allen* v. *United States*, 164 U. S. 492, in the event of inability of the jury to agree. [636–638]

Where in a murder case the jury were recalled to the court room about five hours after retiring to consider the case, and the judge then commented that there appeared to be a "disagreement or failure to reach a verdict," there was no error in a reading, essentially verbatim, of the charge approved in *Commonwealth* v. *Tuey*, 8 Cush. 1, together with a part of the opinion of this court in the *Tuey* case, nor error in a failure by the judge to then further charge the jury "that a juror who still adheres to his conscientious convictions after hearing these excerpts from *Commonwealth* v. *Tuey* . . . should not change his opinion merely because of the opinion of his fellow jurors." [636–638]

INDICTMENT found and returned in the Superior Court on November 9, 1967.

Motions by the defendant were heard by *Tomasello, J.*, and the case was tried before him.

*James P. McGuire* for the defendant.

*Armand Fernandes, Jr.*, Assistant District Attorney, for the Commonwealth.

CUTTER, J.   Upon a second indictment for the murder of Frank Duarte on October 24, 1966, Rollins was found guilty of murder in the second degree of Frank Duarte by shooting.   The case is before us under G. L. c. 278, §§ 33A–33G.   The facts pertinent to each assignment of error are stated in connection with that assignment.

1. On November 15, 1966, Rollins was first indicted. On March 9, 1967, the District Attorney filed a nolle prosequi with respect to so much of that indictment as charged murder in the first degree. On that day also Rollins (for whom counsel had been appointed) filed a plea of guilty of second degree murder.

A Superior Court judge on November 7, 1967, granted Rollins's motion pro se to vacate sentence and to retract his plea of guilty. A new indictment for murder against Rollins was returned on November 9, 1967. The earlier sentence was revoked with the notation on the docket that Rollins had "this day been reindicted."

To the new indictment Rollins filed a plea of not guilty. He also filed a motion to dismiss so much of the second indictment as charged murder in the first degree. In this he asserted essentially the facts set out above concerning the proceedings on the first indictment and the reindictment. A second Superior Court judge, who later presided at the trial, denied this motion prior to trial of the second indictment. He also, during the trial, twice denied a second motion to dismiss so much of the indictment as charged first degree murder.

When the nolle prosequi of the first degree murder charge in the first indictment was filed, no jury had "been called and charged with the deliverance of the accused." Rollins had not been placed in legal "jeopardy." *Kepner* v. *United States,* 195 U. S. 100, 128. A nolle prosequi before a jury has been empanelled does not operate as an acquittal of the charge discontinued. *Commonwealth* v. *Wheeler,* 2 Mass. 172, 173 (cited with apparent approval in *Commonwealth* v. *DiStasio,* 297 Mass. 347, 355, cert. den. 302 U. S. 683, and in *Hicks* v. *Commonwealth,* 345 Mass. 89, 91, cert. den. 374 U. S. 839). *Bassing* v. *Cady,* 208 U. S. 386, 391–392. See G. L. (Ter. Ed.) c. 277, § 70A; *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 17–19. See also G. L. c. 263, §§ 7 and 8, and c. 277, § 75. There was no implied acquittal of Rollins (see *Green* v. *United States,* 355 U. S. 184, 187–191) of the type considered in *Commonwealth* v. *Burke,* 342 Mass. 144,

145–149, for Rollins had not been placed on trial. Cf. *United States ex rel Hetenyi* v. *Wilkins,* 348 F. 2d 844, 859 (2d Cir.), cert. den. sub nom. *Mancusi, Warden,* v. *Hetenyi,* 383 U. S. 913.

Rollins, although not acquitted of first degree murder on the first indictment, argues that "fundamental justice" (see the *Hetenyi* case, *supra*) should preclude his reindictment for first degree murder following the District Attorney's discontinuance of the first degree charge in the first indictment. This contention is without merit. We think that the Superior Court judge, whose order vacated the second degree sentence upon Rollins's motion, could have permitted the District Attorney to withdraw his discontinuance of the first degree charge. It may reasonably be inferred that Rollins's willingness to plead guilty to a second degree charge, and thus avoid the risks and burdens of a capital trial, was the reason for the District Attorney's discontinuance of the first degree charge. When Rollins sought to withdraw his plea, there would have been no injustice in placing not only Rollins, but also the Commonwealth, in the same position in which they severally were before the acceptance of the discontinuance of the first degree charge and the plea to second degree murder. The same result could be obtained by reindictment. The trial judge properly refused to dismiss so much of the second indictment as charged first degree murder.

2. The trial judge was not required to charge that the jury would not be warranted in returning a verdict of guilty of murder in either the first or second degree. The evidence most favorable to the Commonwealth permitted the jury to conclude (a) that Rollins spent a considerable period prior to the shooting of Duarte drinking in the Broadway Cafe in New Bedford; (b) that, at some time during the evening, Duarte gave Rollins a demonstration of judo or karate, in which Rollins fell to the floor two or three times; (c) that Rollins "was feeling pretty good" and had been "drinking to excess," (but there was conflicting testimony concerning whether he was drunk or was walking fairly well); (d) that

at some time Rollins was hurt or became angry, and told Alfred Santos, who was in the cafe, that he (Rollins) had a gun and would shoot Duarte; (e) that Rollins left the cafe, went to his house, and returned with a loaded rifle, after an absence of about fifteen minutes; (f) that no one struck Rollins after his return, until Rollins fired a shot which hit Duarte, at a time when Duarte was about to leave the cafe; and (g) that the shot resulted in Duarte's death. The jury were not required to believe Rollins's testimony, in effect, that during the evening he had been attacked by Duarte, a much bigger man, with judo blows; that Duarte had twisted his arm (before Rollins left the cafe to get his rifle) without Rollins's consent or provocation; that, when Rollins returned from his house with the rifle, he had no intention of firing it; that after Rollins's return, Duarte approached him and slapped him; or that Rollins was seriously under the influence of alcohol during the altercation and later when he made somewhat incriminating admissions to police officers (after being warned of his rights).

The jury, on the conflicting evidence, could reasonably have concluded that Rollins, for at least fifteen minutes, had entertained the intention of shooting Duarte and had made a substantial taxi trip to obtain a rifle for the purpose. It was open to the jury, particularly in view of the prolonged opportunity for premeditation, to find Rollins guilty of either first degree or second degree murder. See *Commonwealth* v. *Soaris*, 275 Mass. 291, 299–300; *Commonwealth* v. *Rogers*, 351 Mass. 522, 532–533, cert. den. 389 U. S. 991. It was for the jury to determine, on the conflicting evidence, whether the killing was first degree murder or whether it amounted only to second degree murder because Rollins was so drunk that there was absent "deliberately premeditated malice aforethought" (G. L. c. 265, § 1). The authorities cited in the *Rogers* case, establish that, even if Rollins was drunk, the killing (unless, for example, found to be an accident or in the heat of a sudden affray) "would involve at least malice aforethought not deliberately premeditated" (p. 533). It would not be converted into manslaughter by

Rollins's intoxication alone. It was also for the jury to determine on the evidence whether, because of an attack by Duarte (if the jury believed Rollins's testimony that there was such an attack), the offence was manslaughter in the heat of sudden affray or combat rather than murder. See *Commonwealth* v. *Webster*, 5 Cush. 295, 304-306; *Commonwealth* v. *Young*, 326 Mass. 597, 600-601.

3. Rollins contends that the situation before us is similar to that considered in *Commonwealth* v. *Baker*, 346 Mass. 107, 109-119. The evidence of this cafe altercation, after a good deal of drinking had been done by Rollins and by others present, does not indicate to us, as did the evidence in the *Baker* case, a likelihood that the intention to shoot was immediately induced by a sudden attack. It is probable, of course, that this killing would not have occurred if all concerned had not been drinking, and if somewhat rough judo demonstrations had not taken place in barroom surroundings. Nevertheless, the record warrants the conclusion that Rollins was not seriously attacked or threatened by Duarte, and there is materially more evidence of an appreciable period of premeditation than in the *Baker* case. We do not require (see G. L. c. 278, § 33E, as amended through St. 1962, c. 453), as in the *Baker* case, the entry of a verdict of a lesser degree of guilt, although such a verdict would have been warranted at least by Rollins's testimony.

4. The trial judge was warranted in admitting evidence of Rollins's statements to police officers immediately after the shooting. The judge could reasonably conclude, both on the testimony at a voir dire and before the jury, that Rollins had been given the warnings required by *Miranda* v. *Arizona*, 384 U. S. 436; that he had not been questioned, or permitted to speak, until such warnings had been given; and that he had been afforded opportunity to use the telephone. It could also have been concluded from the evidence, including testimony of police officers about his condition and behavior, that Rollins was sufficiently sober to understand the warnings and to make an intelligent decision to answer questions despite those warnings. Although Rollins, after the shoot-

ing, had been subdued and beaten by bystanders at the cafe, it could be found that he made, and was able to make, intelligent, sensible responses to questions.

5. The jury retired to consider the case at 11:48 A.M. on January 30, 1968. At 5 P.M. on that day, the jury were recalled to the courtroom. The judge commented that there seemed to be "disagreement or failure to reach a verdict at this point." He then read to them essentially verbatim the charge approved in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2–3, with one omission relating to the burden of proof,[1] on which the judge had already charged. He also read to the jury the part of the opinion of this court in the *Tuey* case, beginning with the sentence (8 Cush. 3), "A proper regard for the judgment of other men will often greatly aid us in forming our own." At the close of the additional instructions, Rollins's counsel asked the judge to charge further "that a juror who still adheres to his conscientious convictions after hearing these excerpts from *Commonwealth* v. *Tuey* . . . should not change his opinion merely because of the opinion of his fellow jurors." The judge commented that the "*Tuey* case actually says that in words, as I remember it. Nevertheless, I decline to . . . instruct them" further. An exception was saved. The jury returned their verdict after about fifteen minutes further deliberation.

The *Tuey* charge was approved in *Allen* v. *United States*, 164 U. S. 492, 501–502, and in Federal cases is usually referred to as the *Allen* charge. Doubtless, it may go "nearly if not quite to the extreme limit," as was indicated in *High-*

---

[1] The judge omitted the italicized words in this passage from the charge (8 Cush. at p. 2): "And with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable . . . (naturally) *the law imposes the burden of proof on one party or the other, in all cases. In the present case, the burden of proof is upon the commonwealth to establish every part of it, beyond a reasonable doubt; and if, in any part of it, you are left in doubt, the defendant is entitled to the benefit of the doubt and must be acquitted. But,* in conferring together, you ought to pay a proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments." The word "(naturally)," set out above in parentheses, does not appear in the *Tuey* charge. The complete italicized sentence, of course, would be inappropriate in a civil case, without some modification. The judge also varied the charge by referring to a jury of "twelve men (or women)," adding the words in parentheses.

*land Foundry Co.* v. *New York, N. H. & H. R.R.* 199 Mass. 403, 407–409. In that case, additions to the *Tuey* charge were regarded (p. 408) as having gone "much further" and were disapproved. In general, however, use of this charge has been approved in this Commonwealth, and (as was recognized in the *Highland Foundry* case) its use has been "with salutary effect." See *Commonwealth* v. *Whalen,* 16 Gray, 25, 27–28; *Commonwealth* v. *Ford,* 146 Mass. 131, 132; *Commonwealth* v. *Poisson,* 157 Mass. 510, 513; *Commonwealth* v. *Kelley,* 165 Mass. 175, 176. See also *Commonwealth* v. *Hassan,* 235 Mass. 26, 33; *Fulwood* v. *United States,* 369 F. 2d 960, 961–963 (Ct. App. D. C.), cert. den. 387 U. S. 934; *Walsh* v. *United States,* 371 F. 2d 135, 136 (9th Cir.), cert. den. 388 U. S. 915. See also *Kawakita* v. *United States,* 190 F. 2d 506, 521–528 (9th Cir.), affd. 343 U. S. 717, 744; *Thaggard* v. *United States,* 354 F. 2d 735, 739 (5th Cir.), cert. den. 383 U. S. 958.

We are aware that the *Tuey* and *Allen* charges have been the subject of recent adverse criticism. See Am. Bar Assn. Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (1968), § 5.4, pp. 145–156, and cases cited. This report recommends that use of this type of charge be discontinued. Certain additions to, or variations of, the charge have been disapproved as coercive. *Jenkins* v. *United States,* 380 U. S. 445, 446 ("You have got to reach a decision in this case"). *Burroughs* v. *United States,* 365 F. 2d 431, 433–434 (10th Cir.). *United States* v. *Harris,* 391 F. 2d 348, 350–357 (6th Cir.). See *Williams* v. *United States,* 338 F. 2d 530, 531–533 (Ct. App. D. C.), but see *Fulwood* v. *United States,* 369 F. 2d 960, 962–963 (Ct. App. D. C.).[2]

---

[2] For additional discussions of this general type of additional charge, see *United States* v. *Rogers,* 289 F. 2d 433, 434–437 (4th Cir.); *Powell* v. *United States,* 297 F. 2d 318, 319–322 (5th Cir.); *Huffman* v. *United States,* 297 F. 2d 754, 755–759 (5th Cir. dissent of Brown, J.), cert. den. 370 U. S. 955; *Andrews* v. *United States,* 309 F. 2d 127, 129–130 (5th Cir. dissent of Wisdom, J.), cert. den. 372 U. S. 946; *Green* v. *United States,* 309 F. 2d 852, 853–856 (5th Cir.); note, 53 Va. L. Rev. 123; annotation, 100 A. L. R. 2d 177. See also *State* v. *Thomas,* 86 Ariz. 161, 162–166; *State* v. *Peirce,* 178 Iowa, 417, 423–428; *People* v. *Kasem,* 230 Mich. 278, 288–294; *State* v. *Randall,* 137 Mont. 534, 540–543. As to additional inquiries by the trial judge, see *Brasfield* v. *United States,* 272 U. S. 448, 449–450.

Most objections to the *Tuey* charge, and to some modifications of it, have been that the charge may coerce jurors improperly to disregard their reasonably entertained, conscientious judgments. The language plainly was originally carefully formulated to avoid any such effect, and to state merely what an intelligent juror should set as a standard for his own conduct. Obviously, the charge should be used with care to avoid all coercion and any indication of judicial bias or pressure. It should not be employed prematurely or indiscriminately. While expansion of the language may run the risk of appellate disapproval, much must be left to the discretion of the trial judge in this, as in other matters affecting the conduct of the trial.

We think that the language of the *Tuey* case has stood the test of time as a reasonable method of inviting a jury's attention, even after the original charge, to considerations which, as reasonable men, they should take into account, without surrendering positions which conscience and careful judgment have led them to adopt. The parties are entitled to have a jury appropriately guided at all stages by the trial judge, whose proper participation is essential to fair trial by jury. The *Tuey* charge seems to us a method by which a trial judge may assist a jury when requesting them to consider a case further.

No special circumstances made the use of the *Tuey* charge inappropriate in the present case. The evidence was not unduly extensive. The issues were not complicated. The jury had been considering the case for at least four hours. Nothing in the record gives basis for any inference concerning how the jury were divided. The judge apparently merely read the material from the *Tuey* case without adding more than (a) that he agreed with the language he had read and (b) a "request that you now recess for further deliberations, and see if you can agree on a verdict."

We perceive no prejudice to Rollins in the omission from the complete *Tuey* charge (fn. 1) or in the judge's action in reading also from the opinion of the court in that case. If Rollins had any objections to these two aspects of the judge's

supplemental instructions, the nature of the objections should have been stated much more clearly.

*Judgment affirmed.*