**STATE of Maine**

v.

**John J. WHITE.**

Supreme Judicial Court of Maine.

Jan. 7, 1972.

Joseph E. Brennan, County Atty., George Mitchell, Asst. County Atty., Portland, for plaintiff.

Thompson, Willard, Smith & McNaboe by Thomas R. McNaboe, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

On July 15, 1964, John J. White, the Appellant herein, met a young man in a restaurant in Portland, Maine. As a result of events leading from this chance encounter, the Appellant has three times stood before a Traverse Jury charged by an indictment with having committed the crime of sodomy.

The first of the trials on the indictment resulted in a conviction, appeal from which terminated successfully for the Appellant because prejudicial misinformation had been brought to the attention of the jury on cross-examination of the then Defendant. State v. White, Me., 217 A.2d 212 (1966).

The second resulted in a mistrial.

The third is now before us for review on appeal.

The record reveals the second trial was commenced on May 31, 1966, and terminated in a mistrial ordered at Appellant's request. There is nothing in the record before us which explains what occasioned the mistrial beyond the cryptic docket entry:

"June 1, 1966. Motion by Defendant for Mistrial. Motion granted. Cont'd. day to day to June 9, 1966."

The conviction which resulted from the third trial was seasonably appealed. The Trial Court appointed counsel to prosecute the appeal on behalf of the Appellant, after finding that the Appellant was indigent. Court-appointed counsel seasonably assigned 10 Points of Appeal.

Counsel has filed an excellent brief in support of these Points of Appeal which he considered "*primary*" and has ably argued those Points before this Court. As is often the case, the Appellant determined that his own views as to the law should be presented to this Court and so he has filed his own brief *pro se*.

Most of the Points raised can be dismissed without extended discussion thereof.

The Appellant in his *pro se* brief argues the Court erred in denying his motion in arrest of judgment. The issues raised by this motion were raised, discussed and decided adversely to the Appellant in his pre-

vious appeal to this Court. State v. White, Me., 217 A.2d 212 (1966).

The denial of the motion for a new trial, of which the Appellant presently complains, raises substantially the same issues presented by other Points of Appeal which we find to be without merit as hereinafter discussed.

The Appellant in his *pro se* brief urges it was double jeopardy for him to be tried after the previous trial had terminated by withdrawal of the juror and the first trial had resulted in a new trial being ordered on appeal.

■ Suffice it for us to say, in deciding the Point, the ordering of the mistrial was in response to the defendant's motion by which he sought such result. We have repeatedly held a plea of former jeopardy is barred in such circumstance. State v. Slorah, 118 Me. 203, 106 A. 768, 4 A.L.R. 1256 (1919); Clukey v. State, 160 Me. 198, 202 A.2d 6 (1964); State v. Sanborn, 157 Me. 424, 173 A.2d 854 (1961).[1] Thus, the issue he raises with regard to the previous mistrial constituting jeopardy is without merit.

■ That retrial after a successful appeal does not constitute double jeopardy is by now *"Hornbook"* law,[2] United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

The Appellant in his *pro se* brief complains that the Presiding Justice erred in charging the jury that force need not be shown to have been used, although the indictment alleged the use of force as an element of the crime.

The crime of *"sodomy"* is included as part of the crime described by the statute as *"Crime against nature."* The statute is couched in these words:

> "Whoever commits the crime against nature, with mankind or with a beast, shall be punished by imprisonment for not less than one year nor more than 10 years." 17 M.R.S.A. § 1001.

■ Force is not an essential element of the crime of sodomy. As this Court said in State v. Langelier, 136 Me. 320, 8 A.2d 897, (1939):

> "Although forms used in criminal procedure in this state have generally included the allegation of force in an indictment of this character, yet *it being unnecessary of proof*, an indictment which covers all the material statutory terms is sufficient. (Emphasis supplied)

1. In Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the double jeopardy prohibition of the Fifth Amendment of the Constitution of the United States was made enforceable against the States through the Fourteenth Amendment.

All the cited cases were decided prior to the decision of the Supreme Court of the United States in United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970). Jorn has been recognized as "a significant departure from prior controlling case law." United States v. Walden, 448 F.2d 925, C.C.A. 4 (1971). *Walden* recognizes that there are circumstances when a mistrial motion or consent will not remove any barrier to reprosecution.

We do not here intend to suggest there can never be circumstances which would bar retrial under the *"jeopardy clause"* of the Constitution, even though the defendant has consented to the mistrial.

There are no circumstances in this case apparent from the record which compel us to examine the question further. We do not mean to intimate what result might be reached under entirely different circumstances.

2. In United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), Mr. Justice Harlan, speaking for the majority, said: "The principle that [the double jeopardy clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence. In this respect we differ from the practice obtaining in England.

■ It is likewise clear consent is no defense to a prosecution for sodomy. State v. Langelier, supra.

The evidence before us reveals that the alleged offense occurred in an automobile while the automobile was parked in Appellant's dooryard and later in a bedroom in Appellant's home.

After both the State and the defendant had presented evidence and each had rested, except for argument, the Appellant requested the jury be taken to view the automobile in which the act was alleged to have occurred.

The Presiding Justice denied his request. Appellant now says this denial was error.

■ The granting or denial of a request for a view is addressed to the sound discretion of the Presiding Justice. State v. McNaughton, 132 Me. 8, 164 A. 623 (1933).

As we said in State v. Fernald, Me., 248 A.2d 754, 758 (1968):

"This jurisdiction has for many years held that the purpose of a jury view in a criminal case is not to receive evidence but to enable the jury more intelligently to apply and comprehend the testimony presented in court."

See also State v. McDonald, Me., 229 A.2d 321 (1967).

■ The Appellant wished to have the jury view an automobile which had been described to them by make and model. In view of the general familiarity with automobiles which all people have, we cannot understand how viewing this particular automobile would have enabled the jury "more intelligently to apply and comprehend the testimony." See, State v. McNaughton, supra.

We find there was no abuse of the Trial Justice's discretion.

On the night the acts of sodomy were alleged to have been committed one Paul Kunz, a friend of the Appellant, was lying down in the back seat of the automobile in which one of the alleged acts took place.

Kunz testified at the first trial, but at the time the second and third trials were held, he was in the custody of the State of New Hampshire.

■ The Appellant, in his *pro se* brief argues the Court erred in refusing to order Kunz be brought from New Hampshire to Maine to testify.

The statute which permits bringing a prisoner from another State to testify as a witness was not enacted in Maine until 1967 which was subsequent to the date of the Petitioner's third trial. 15 M.R.S.A. § 1463.

The statute which the Appellant cites, 15 M.R.S.A. § 1411, did not apply to a potential witness who was a prisoner of another State and held in custody in such sister State.

Kunz's deposition was taken. During the trial and preparatory to having the legally admissible portions of the deposition read to the jury, a hearing was held in the Presiding Justice's chambers without the presence of the jury to resolve the legal issues arising from the State's objection to portions of the deposition. The Appellant was not present in chambers, but he was represented by his attorney.

He now argues in his *pro se* brief that he was unconstitutionally deprived of his right to be present.

The extent of a defendant's right to be present at the various stages of his trial was exhaustively discussed in State v. Pullen, Me., 266 A.2d 222 (1970). It would serve no useful purpose to repeat that discussion here.

■ A defendant has the absolute right to hear everything the jury hears. He does not have *"a right"* to be present when, outside the presence of the jury, discussion is had only concerning questions of

law to which discussions the defendant could be expected to add little. Snyder v. Mass., 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); State v. Fernald, Me., 248 A. 2d 754 (1968).

We did say in *Pullen* and we repeat here that:

"We are of the view however that the better practice would be for the trial courts to hear such motions in open court in the absence of the jury. However, if in the sound discretion of the trial judge such motions should on occasion be heard in chambers, the better practice again would be to require the defendant's presence." 266 A.2d 222, 228 (1970).

■ Here, as there, we hold that the defendant's absence from chambers when discussions were had as to rulings of law, did not constitute a denial of his constitutional right to a public trial and to be present at every stage of his trial nor a violation of Rule 43, Maine Rules of Criminal Procedure.

The Appellant elected not to testify at his trial. Concerning such failure the Presiding Justice in his charge to the jury said, in part:

"And so I charge you that you shall in no way consider the failure of this defendant to testify in his own behalf as in any way bearing upon his guilt."

Although no objections were taken to this or any other portion of the charge, the defendant now argues that it was error for the Court to bring the defendant's failure to testify to the attention of the jury.

■ We have repeatedly pointed out that no allegation of error will be reviewed by this Court unless compliance has been had with the provisions of Rule 30(b), Maine Rules of Criminal Procedure.

■■ Nevertheless we take this occasion to say that in any case in which the defendant does not take the stand to testify, the practice should be that the Presiding Justice instruct the jury that the failure to testify shall not be "taken as evidence of his guilt," unless the defendant specifically, and on the record, requests that the Court not allude to his failure to testify. See: 15 M.R.S.A. § 1315. See also: State v. Banks, 78 Me. 490, 7 A. 269 (1886).

The record before us reveals the trial with which we are presently concerned commenced on June 13, 1966, at 9:30 a. m.

The State offered the testimony of the person with whom the act of sodomy is alleged to have taken place and one Police Officer who was asked only a few questions.

The defendant offered the testimony of seven witnesses and the deposition of Paul Kunz. The testimony of all seven witnesses consisted of a few questions and answers.

The presentation of evidence, including the deposition, was completed at 4:45 in the afternoon of the 14th of June. The jurors were sent out for dinner and returned at 7:35 p. m. After being instructed, the jury retired to deliberate. At 11:37 p. m. by direction of the Court the jurors were called into the courtroom.

There is nothing in the record which indicates;

(a) that the jury informed the Presiding Justice they were in disagreement, and

(b) that if they were, in fact, in disagreement, the Presiding Justice knew the extent of their division.

He then, over objections of counsel for the defendant, read essentially the instructions to the jury given by Justice Hoar in the now celebrated case of Commonwealth v. Tuey, approved in 8 Cush. 1. He did not read that part of *Tuey* which reads:

"In order to make a decision more practicable the law must impose the burden

of proof on one party or the other in all cases. In the present case the burden of proof is upon the Commonwealth to establish every part of it, beyond a reasonable doubt; and if in any part of it you are left in doubt, the defendant is entitled to the benefit of the doubt and must be acquitted." [3]

The jury recommenced deliberations at 11:45 p. m. and returned with a verdict of guilty at 12:32 a. m. on June 15th.

The Appellant now urges upon us that it was reversible error for the Court to instruct the jury as he did.

The Appellant's counsel in his brief argues:

(1) that the charge as given was coercive *per se*, and

(2) that even if it was not coercive *per se*, it was coercive as applied to these facts.

Probably no decision has been more frequently examined and reexamined and discussed in such detail, both in opinions and law reviews, as *Tuey* and Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L. Ed. 528 (1896), which approved *Tuey*.

Our own Court took occasion to call the attention of the Bench and Bar to this controversy, currently raging about the propriety of giving the *Tuey* charge or the *Allen* charge, as it is commonly called in the Federal Courts, in State v. Toppi, et als, Me., 275 A.2d 805 (1971), and in State v. Poulin, Me., 277 A.2d 493 (1971).

 We are not convinced that the *Tuey* charge is coercive *per se*. The language of Bigelow, J., written for the Court in Commonwealth v. Tuey, supra, well expresses our view.

" . . . we do not so understand the purport and effect of the language used by the judge who tried the cause."

Nor do we find that in the circumstances in which the instructions were given in this case, they were coercive.

Because we have on more than one occasion made reference to the many criticisms of the use of the *Allen-Tuey* charge, we are confident it will come as no suprise, either to the Bar or to the Justices of the Superior Court, that we have long given thought to the advisability of reexamining the time-honored practice of giving either *Tuey* verbatim or some modified version of *Tuey* whenever it appears a jury is deadlocked in a criminal case.

A committee of the American Bar Association has exhaustively studied the use of the *Allen* charge and has suggested an alternative. Am.Bar Ass'n. Project on Minimum Standards for Criminal Justice, Standards relating to Trial by Jury (1968) § 5.4, P.p. 145–156.

The Supreme Court of Massachusetts recently reexamined the use of *Tuey* in Commonwealth v. Rollins, 354 Mass. 630, 241 N.E.2d 809 (1968). The conclusions of the Massachusetts Court were summed up by Mr. Justice Cutter, speaking for a unanimous Court as follows:

"We think that the language of *Tuey* case has stood the test of time as a reasonable method of inviting a jury's attention, even after the original charge, to considerations which, as reasonable men, they should take into account, without surrendering positions which conscience and careful judgment have led them to adopt. The parties are entitled to have a jury appropriately guided at all stages by the trial judge, whose proper participation is essential to fair trial by jury. The *Tuey* charge seems to us a method by which a trial judge may assist a jury when requesting them to consider a case further." 241 N.E.2d 809, 814.

The Circuit Court of Appeals for the District of Columbia, sitting en banc in

---

3. He had so instructed them in his main charge.

Thomas v. United States, 449 F.2d 1177, (1971), has banned the use of the *Allen* charge and has accepted the A.B.A.'s standard as more acceptable.

The majority opinion written by Robinson, J., described the A.B.A. version as "a prophylactic device to eliminate future vexation."

A strong dissenting opinion in which four judges joined, stated: "I must decline to exalt the recommendation of the Bar Association over the decisions of the Supreme Court of the United States."

*Allen* also has been abandoned and the A.B.A. standard substituted therefor in the Third and Seventh Circuits. United States v. Fioravanti, 412 F.2d 407, C.C.A. 3 (1969); United States v. Brown, 411 F.2d 930, C.C.A. 7 (1969). See also: United States v. Flannery, 451 F.2d 880, C.C.A. 1, (1971).

See also: State v. Marsh, Or.1971, 490 P.2d 491.

The use of the Allen-type charge prior to the jury's commencing deliberations was examined and approved by this Court in State v. Mann, 143 Me. 305, 61 A.2d 786 (1948). This accords with the A.B.A. standard.

We have concluded the time has come for Maine Courts to abandon the use of the *Tuey-Allen* charge or any modified version thereof.

■ Accordingly, because we feel the interests of judicial adminstration require us to do so, we recommend against the use of the *Allen-Tuey* charge or any modified form thereof after the jury has commenced deliberations in any criminal case and we adopt the A.B.A.'s standard as to the recommended practice. That standard reads:

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement. * * *"

We have examined the assigned claims of error with great care.

We are satisfied a pure question of fact was presented.

If the jury accepted the testimony of the State's principal witness in its major respects, it had no alternative but to find as it did.

If it entertained a reasonable doubt as to the correctness of that witness' version of the events of what is for this Appellant the

fateful night of June 15th, 1964, it was required to acquit.

The jury obviously found no reasonable doubt as to the defendant's guilt.

We cannot say such finding was against the law, against the evidence or against the weight of the evidence.

The entry must be,

Appeal denied.

All Justices concurring.