STATE of Maine

v.

Peter J. QUINT.

Supreme Judicial Court of Maine.

Argued May 5, 1982.
Decided Aug. 13, 1982.

John D. McElwee, Dist. Atty., Brian E. Swales (orally), Asst. Dist. Atty., Houlton, for plaintiff.

Jordan & Goodridge, Donald H. Goodridge (orally), Houlton, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

After a jury trial in the Superior Court, Aroostook County, the defendant was convicted of operating a motor vehicle under the influence of intoxicating liquor in violation of 29 M.R.S.A. § 1312 (1980). As the sole ground of appeal here, the defendant claims that the court's particular instructions requiring the jury to continue its deliberations after it had reported a deadlock were coercive in nature and constitute reversible error. We sustain the appeal.

The jury commenced its deliberations at 10:23 in the morning of the second day of

trial. It returned an hour later after the presiding justice acceded to its request that he review that part of his instructions relating to the elements of the offense of OUI. The jury retired once again at 11:48. Several hours later,[1] the jury reported an impasse in its deliberations. After the jury returned to the courtroom, the presiding justice gave the following charge requiring that it continue its attempts to reach a verdict:

> I am going to give you further instructions concerning your duty to attempt to arrive at a verdict. It is your duty and your oath to make an honest attempt to arrive at a verdict. It is my duty to instruct you concerning your manner of deliberating. Each of you must agree to reach a verdict. Your verdict has to be unanimous. Each of you has a veto on all the others and a group of you has a veto on all the others. A veto should be exercised with caution and restraint. Each of you must decide the case for youselves [sic] after an impartial consideration of all the evidence with your fellow jurors in view of the instructions of law given you by the Court. Be ever wary that your conscience does not mislead you. Conscience can be a fate just like anything else. Only reason and the reasoning process based on experience can truly determine the questions submitted to you for decision. Jurors have to be reasonable, fair and openminded in fairness to the parties in this case. As jurors you must not be obstinate, stubborn, vanity or pride of opinion. No person, majority or minority, has a monopoly on the truth, right or justice. Under our system of justice, a fair and just verdict is arrived at by twelve persons deliberately seeking the truth by means of reason and the reasoning process based upon experience. The jury room is no place to take up and maintain a spirit of controversy on either side of the case. On the other hand, the jury room is a place to seek the truth by calm deliberation, mutual concession and due deference to each other's opinions. In conferring together, you ought to pay proper respect to each other's opinions and listen to each other's arguments with a disposition to be convinced. A juror should consider whether his own opinion is a reasonable one when it makes no impression on the mind of another juror who is equally honest, equally intelligent, has heard the same evidence with the same degree of attention and has an equal desire to arrive at the truth and under the sanction of the same oath. You should also consider this case must at some time be decided. You are selected in the same manner and same source as any future juror may be drawn and there is not reason to suppose that the same case will ever be submitted to twelve people more intelligent or impartial or more competent to decide it or that more or clearer evidence will be produced on one side or the other. By such means and only by such means, anybody where unanimity is required, may safe and just results be obtained. With all this review, it is your duty to decide the case if each of you can conscientiously do so. You may retire to your jury room for further deliberations.

The jury subsequently deliberated for sixty-five additional minutes and returned a verdict of guilty. The defendant now argues that those instructions were impermissibly coercive.

▮    We conclude as a preliminary matter that the defendant did not object to the giving of this instruction at trial. Before the jury returned for the second time, the court discussed the proposed instruction with counsel. Defense counsel even suggested a modification in the language proposed by the court. The court stated that the substance of the modification was properly covered in the proposed language. Defense counsel did not indicate any disagree-

---

1. The exact amount of time is not indicated in the record.

ment with the court's understanding of the nature of the charge. It cannot be said that defense counsel objected to the instructions by directing the attention of the court to the existence of any error in the proposed instruction. *See* M.R.Crim.P. 30(b); *cf. Wescott v. Vickerson*, Me., 284 A.2d 902, 904 (1971) (examining need for timely objection to jury instructions under M.R. Civ.P. 51). Our review of the error asserted on this appeal, therefore, "will be limited to whether the offending instruction 'when reviewed with the charge as a whole constituted highly prejudicial error tending to produce manifest injustice.' " *State v. Mahaney*, Me., 437 A.2d 613, 618–19 (1981), *quoting State v. Doughty*, Me., 399 A.2d 1319, 1326 (1979).

The instruction challenged here represents a variation of the *Allen* "dynamite" charge, *see Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528, 530 (1886), which when properly used is intended to assure the existence of a genuine impasse as a predicate for a determination of "manifest necessity" for a mistrial if the jury cannot ultimately agree on a verdict. *See State v. Linscott*, Me., 416 A.2d 255, 258–59 (1980). When improperly used, it operates to "blast" a verdict out of a deadlocked jury. Hence, although the *Allen* charge is not deemed to have a *per se* coercive effect on the jury, the dangers that inhere in its use have caused it to be disapproved by this Court. *See Mahaney*, 437 A.2d at 619; *State v. White*, Me., 285 A.2d 832, 838 (1972).

At issue on this appeal is an instruction that bears, in some respects, a resemblance to the one found in *Mahaney* to be free of manifest error. Both include instructions that an individual juror must be willing to reflect, during the process of deliberating collectively with fellow jurors, on the validity of his or her conclusions, but that any verdict must be the sum of conscientiously-held individual convictions.

Yet, the instruction given the jury in the case at bar also includes elements additional to those in the *Mahaney* instruction, which could have operated only to enhance any coercive effect on the jury after it had reached an impasse in its deliberations. These factors compel the conclusion on this appeal that the instruction was flawed to such a degree that it embodies manifest error.

First, in *Mahaney*, while explaining that a juror should change his or her opinion if "convinced that that opinion is erroneous," the presiding justice did not dwell on the importance of re-evaluating one's position to an extent that those remarks were given a significance paramount to his subsequent direction that a juror "should not surrender an honest belief or conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict." 437 A.2d at 618. A balance of this type between the competing considerations of the desirability of a juror's reconsideration of his opinions and the need that his verdict accurately reflect his honestly-held beliefs is to be found in the A.B.A. Standards Relating to the Administration of Criminal Justice, *Trial by Jury* § 5.4,[2] the use of which in Maine courts is recom-

---

2. In pertinent part, the A.B.A. Standard provides:

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the

mended. *See White*, 285 A.2d at 838. The striking of this balance is the seminal point of the text of the A.B.A. Standard.

The instruction at issue on this appeal, however, subordinates, in its emphasis, the integrity of an individual juror's honest conviction as to guilt or innocence, to the dynamics of interchange among the jurors and concession to the views of other jurors. That the trial justice below explained at great length the juror's duty to engage in discussions with other jurors and to maintain a deferential attitude (that is, "listen to each other's argument with a disposition to be convinced"), and that he placed no express importance on the juror's obligation to maintain his honestly-held beliefs, destroys any semblance of the type of balance embodied in the A.B.A. Standard. The closest the trial judge came to comment on that obligation was his statement early in the instruction that "each of you must agree to reach a verdict. Your verdict has to be unanimous. Each of you has a veto on all the others and a group of you has a veto on all of the others." Any bolstering effect of that language on maintenance of honestly-held views was minimized by the immediately following statement that "a veto should be exercised with caution and restraint." What little positive impact of that language remained, was thoroughly dissipated by the succeeding lengthy discussion of the need to consider the views of other jurors in the absence of any "spirit of controversy" and the need to reach a decision in the case. This imbalance was not effectively redressed by the court's passing reference at the end of the instruction to the jury's duty "to decide the case if each of you can conscientiously do so." The difference in emphasis is further displayed by the omission of any express instruction such as is found in the *Mahaney* charge and in the A.B.A. exemplar, that a juror should not

retreat from an honest conviction simply to reach an accord with his or her fellow jurors. While the omission to give such an instruction does not necessarily render the charge coercive *per se, see Mahaney*, 437 A.2d at 618, its absence here could only have heightened the coercive effect of the charge when considered in its entirety by the jurors. Thus, the court below, to an impermissible degree, urged the jurors to surrender, in an attempt to achieve unanimity, their individual beliefs in favor of those held by other members of the jury.

■ Compounding the coercive effect of these instructions was the court's statement to the jury, "[Y]ou should also consider this case must at some time be decided." This observation is simply inaccurate. The possibility of a hung jury in any criminal prosecution is an inevitable consequence of the constitutional requirement that, in criminal cases, a verdict be unanimous. *See Me. Const.*, art. I, § 7. When an impasse among the jurors, amounting to "manifest necessity," prompts the presiding justice to declare a mistrial, retrial may be constitutionally permissible, *see State v. Linscott*, Me., 416 A.2d 255, 259 (1980), but the prosecutor may elect not to do so. Further, the likelihood of such reprosecution has no relevance to the jury's determination of guilt or innocence. Therefore, the court below erred in instructing the jury to consider in its deliberations that the case "must at some time be decided." *See United States v. Flannery*, 451 F.2d 880, 883 (1st Cir. 1971); *United States v. Harris*, 391 F.2d 348, 355–56 (6th Cir. 1968); *People v. Barraza*, 23 Cal.3d 675, 682–85, 591 P.2d 947, 950–52, 153 Cal.Rptr. 459, 462–64 (1979). *Cf. Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957, 958 (1965) (per curiam) (jury's instruction that "you have got to reach a decision in this case," held coercive). *See generally* P. Mar-

opinion of the other jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their delibera-

tions and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

cus, *The Allen Charge Instruction in Criminal Cases: Is the Dynamite Charge About to be Permanently Defused?*, 43 Mo.L.Rev. 613, 622–24 (1978); Note, *The Allen Charge: Recurring Problems and Recent Developments*, 47 N.Y.U.L.Rev. 296, 303–04 (1972).

In addition to being misleading in fact, an instruction of this sort is "coercive in nature." *Harris*, 391 F.2d at 356. The Supreme Court of California has explained that substantial pressure to reach a verdict flows from this instruction when the jurors draw from it the perception that "since some jury, sooner or later, must decide this case one way or the other, and since we're as well equipped to do so as any future jury is likely to be, we may as well finish the task we've begun." *Barraza*, 23 Cal.3d at 685, 591 P.2d at 952, 153 Cal.Rptr. at 464. *But see Fulwood v. United States*, 369 F.2d 960, 963 (D.C.Cir.1966). This element of the present instruction thus served to displace the independent judgment of the jurors in favor of compromise and expediency.

That inclusion, within a charge, of the statement that the case must be decided is *by itself* generally not held automatically to require reversal. *See, e.g., United States v. Silvern*, 494 F.2d 355, 359 (7th Cir. 1973); *People v. Gainer*, 19 Cal.3d 835, 855–56, 566 P.2d 997, 1008, 139 Cal.Rptr. 861, 872 (1977). However, the statement that the case ultimately must be "decided" was here made within the larger context of other instruc-

tions which also created a coercive effect by improperly stressing the desirability of compromise. This particular element of the instruction compounded the coercive effect brought to bear on the jury by the improper imbalance already struck by the court when it required the sacrifice of firmly held beliefs to the need for unanimity. We cannot conclude here, as we did in *Mahaney*, that "whatever the coercive effect of the *Tuey*-like aspects [of the instruction], they are diluted by the contradictory statements in the A.B.A. charge." The total effect created was one so coercive that we can only conclude that the charge, viewed as a whole, constituted highly prejudicial error tending to produce manifest injustice.[3]

■ We take this opportunity to recommend to the trial courts once again the use in such circumstances of the A.B.A. Standard, § 15–5.4.[4] The substance of that charge has received this Court's approval in *White*, 285 A.2d at 838. It is to be borne in mind that departures from its terms require this Court on appeal to perform the difficult task of weighing the coercive impact of such variations in particular circumstances. *See Flannery*, 451 F.2d at 883. Hence, extreme care should be taken by the trial judge in undertaking revision of those terms to assure the inclusion of the substantial terms and essential balance crafted into the model charge.

The entry is:

---

3. *Mahaney*, 435 A.2d 613, in which no manifest error was found, is distinguishable. First, the presiding justice there charged the jury in a manner consistent with the A.B.A. standards approved in *White*, 285 A.2d 832: while a juror should change his or her opinion if convinced that it is erroneous, an honest opinion should not be abandoned solely because it differs from that of others or solely to return a verdict. As we discuss *supra*, the jury in this case was not properly informed of this balance.

Second, the trial justice in *Mahaney* did not represent to the jury that the matter would have to be decided at some juncture. Rather, he stated that, should the jury fail to reach a verdict, "this case is left open and unresolved. Another trial would be a heavy burden for all parties concerned." 437 A.2d at 618. That

charge did not rise to the level of manifest error. *Id.* at 619. Here, not only did the judge expressly state that the case must be decided, but he did so within the context of the general instructions which, taken alone, were coercive. The combined effect, absent in *Mahaney*, is one of manifest error.

4. See *supra* note 2. It is worthy of note that the A.B.A. model suggests the desirability of giving the instruction in question before the jury begins its deliberations rather than waiting for an impasse to develop in the course of deliberations. We have previously approved that practice. *See State v. Mann*, 143 Me. 305, 309, 61 A.2d 786, 788 (1948).

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.