**STATE of Maine**

v.

**David RUSHER.**

Supreme Judicial Court of Maine.

Argued Nov. 10, 1983.

Decided Dec. 19, 1983.

Gene Libby, Dist. Atty., Michael Saucier, Asst. Dist. Atty., Alan M. Harris, Law Student (orally), Alfred, for plaintiff.

Law Offices of Daniel Lilley, P.A., Daniel W. Bates (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Defendant appeals from a judgment of the Superior Court (York County) convicting him of reckless conduct with the use of a dangerous weapon. 17–A M.R.S.A. §§ 211 and 1252(4) (1983). Defendant does not include among his numerous claims of trial error any challenge to the Superior Court's refusal to grant a mistrial after the jury reported it was unable to agree on a verdict. We conclude, nevertheless, that the court's instructions to the deadlocked jury are coercive and that the refusal to grant defendant's motion for mistrial constitutes manifest error requiring the judgment to be vacated.

I

At the conclusion of the trial, the jury deliberated for nearly two hours and then reported that it was unable to reach a unanimous decision. The trial justice instructed the jury as follows:

I have read your note, Mr. Foreman, and what I would like to tell you, I realize you are saying you cannot reach a unanimous decision and you will not be able to reach a decision, but what I want to tell you, this case has been tried as well as it's ever going to be tried. You got all the evidence. These trials are very expensive and both sides want a verdict, and I'm going to ask you to go in and start over fresh and see if you can reach a verdoct (sic). It's only quarter after two. We got a lot of time and not misunderstanding what you are telling me, but these cases are very important. We have a very heavy caseload here. Case has been tried. We are not going to get any better lawyers or jurors. So I'm going to ask you to try again.

Defendant's trial counsel immediately made an appropriate objection to the court's instruction and moved for a mistrial. Specifically, counsel argued that "some of the jurors might feel compelled . . . to return a verdict and may even in fact do injustice to their independent judgment." The motion was denied and the jury eventually returned a verdict of guilty.

Defense counsel has not preserved the trial objection on appeal and has not argued that the court erred in denying the motion for mistrial. Ordinarily, issues which are not raised and briefed on appeal are deemed waived. As a rule of prudence, this Court generally confines its review to those issues which have been identified and briefed by the parties. *State v. Kidder*, 302 A.2d 320 (Me.1973); *State v. Ferris*, 249 A.2d 523 (Me.1969); *State v. Harriman*, 259 A.2d 752 (Me.1969), supplemented by 265 A.2d 706 (Me.1970); *State v. McFarland*, 232 A.2d 804 (Me.1967). Where the defendant's constitutional right to a fair and impartial trial is implicated, however, this Court will notice an obvious error "whether or not it is brought to the attention of the trial *or appellate court*." *State v. Bahre*, 456 A.2d 860, 864 (Me.1983) (emphasis added). M.R.Crim.P. 52(b). The unpreserved error involved in this appeal is so patent as to justify a departure from the prudential rule. When dealing with settled law and egregious error this Court may

adjudicate in the absence of the safeguards provided by the usual appellate process.

█ We have repeatedly cautioned justices of the Superior Court to refrain from using "the Allen 'dynamite' charge ... to 'blast' a verdict out of a deadlocked jury." *State v. Quint,* 448 A.2d 1353, 1355 (Me. 1982). We have strongly recommended that deadlocked juries be instructed in accordance with the A.B.A. Standards Relating to the Administration of Criminal Justice, *Trial by Jury* § 5.4.[1] *State v. Quint,* 448 A.2d 1353, 1355 (Me.1982); *State v. Mahaney,* 437 A.2d 613 (Me.1981); *State v. White,* 285 A.2d 832, 838 (Me.1972). The instruction given by the trial justice in this action deviates dramatically from both the A.B.A. Standard and the instruction found by this Court to be free of manifest error in *State v. Mahaney,* 437 A.2d 613 (Me.1981). In emphasizing the expense of the trial and the importance of the case, the trial justice focused exclusively on the desirability of reaching a verdict. In doing so he made assertions which may have been inaccurate. First he stated that "this case has been tried as well as it's ever going to be tried ... [and] [w]e are not going to get any better lawyers or jurors." Although the statement cannot be demonstrated to be false, it is not demonstrably true. In any event, it serves to encourage compromise. Second, he stated that "both sides want a verdict." When that statement was made,

no inquiry had been made of defense counsel and the presiding justice had no basis for believing that the statement was true. In fact, defendant's immediate request for a mistrial established that the statement was inaccurate. Such a statement, even if accurate, could only serve to heighten the coercive pressure and "to displace the independent judgment of the jurors in favor of compromise and expediency." *State v. Quint,* 448 A.2d at 1357.

The competing interest of having each juror maintain his honestly held beliefs was never mentioned[2] although we have repeatedly stressed its importance. *See, e.g., State v. Quint,* 448 A.2d at 1355–56. We hold that the instruction, when viewed in its entirety, is impermissibly coercive. Although no argument to that effect has been made on appeal, as we have stated previously:

> Where the question of a fair and impartial trial is in the balance ... this Court ... will and should go beyond the legal technicalities that may be required under other circumstances, so that the accused may be assured of that impartial trial which the Constitution guarantees to him.

*State v. Bahre,* 456 A.2d 860, 865 (Me.1983).

## II

Having determined that the judgment must be vacated, we are not required to

---

1. In pertinent part, the A.B.A. Standard provides:

    (a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

    (i) that in order to return a verdict, each juror must agree thereto;

    (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

    (iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

    (iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

    (v) that no juror should surrender his or her honest conviction as to the weight or

effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

    (b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

2. *Compare State v. Mahaney,* 437 A.2d 613 (Me.1981) where the trial justice "admonished the jury that, if they should fail to reach a verdict, the case would be left open and unresolved, placing a heavy burden on all the parties," *id.* at 619 (footnote omitted), but also gave the A.B.A. instruction cautioning against surrendering honestly held beliefs.

address the claims of trial error. Defendant does challenge the court's failure to suppress as evidence a gun seized from his motor home and certain statements made by him at time of arrest. Because of the possibility of retrial without further examination of such pretrial rulings, judicial economy dictates that we reach the merits of these claims.

The facts relating to the seizure of the gun are as follows: On the evening of September 1, 1981 the complaining witness drove to a business establishment in Kittery known as the Moonlight Reader, which was operated by defendant. After purchasing two magazines, he drove to the paved parking area behind the establishment, where defendant's warehouse and motor home were located. After a brief exchange with several persons who appeared behind his car, one of whom the witness believed to be a black man, the witness heard gunshots and drove away. When he arrived home he found a hole, presumably caused by a bullet, in the back of his car.

On the basis of the witness' complaint, three police officers arrived at the area behind the Moonlight Reader to investigate the shooting. Defendant's brother exited the motor home and became involved in a scuffle with two of the officers while the third officer stepped to the doorway of the motor home. From his vantage point outside of the vehicle he observed defendant standing by the steering wheel and a hand gun, pointing in his direction, laying on the console between two seats. Having seen other people in the rear of the motor home, the officer stepped into the entryway of the vehicle and removed the gun from the console.

■ Defendant characterizes the officers' arrival at his motor home as an illegal entry on his property. The suppression justice concluded that the officers were legitimately present outside defendant's motor home pursuant to their investigation of the shooting complaint. That ruling is not in error. *See, e.g., State v. Sapiel,* 432 A.2d 1262 (Me.1981) (investigatory duties of officer

justified entry onto private property where neighborhood experiencing numerous break-ins and car of defendant, a known thief, was present at third party's home); *State v. Rand,* 430 A.2d 808 (Me.1981) (investigating officers may enter common driveway of multiple dwelling).

The officer did not have a warrant to search the defendant's motor home for a gun; however, the officer's observation of the gun, which was in clear view, did not constitute a search. *State v. Harriman,* 467 A.2d 745 at 748 (Me.1983); *State v. Sapiel,* 432 A.2d at 1266. The suppression justice found that the subsequent seizure of the gun from the interior of the motor home was justified by exigent circumstances, namely, the officer's reasonable concern for his own safety and that of others in the area. Because the officer was justified in being present at the point of observation and was thereafter confronted by exigent circumstances, the seizure of the gun was constitutionally permissible. W. Ringel, Searches & Seizures, Arrests and Confessions, § 8.2(a), at 8–8 (2d ed. 1981). *Cf. State v. Harriman,* at 749. We discern no error in the court's refusal to suppress the gun as evidence.

Finally, defendant assigns as error the failure to suppress certain statements made by him. At the suppression hearing the officer quoted the complainant as reporting that one of the people who yelled at the time of the shooting sounded like a black male. When the officers arrived to investigate, they informed defendant that they were looking for a black male. According to the officers, defendant responded that there was no black man and that he had done the shooting. He was then arrested.

■ The suppression justice declined to suppress defendant's statement. Defendant challenges that ruling on the ground that the statement was involuntary because he was drunk. The suppression justice found beyond a reasonable doubt that the statement was voluntary. *See State v. Collins,* 297 A.2d 620 (Me.1972). Although the

evidence of defendant's drinking is uncontradicted, that evidence alone does not compel a finding that the statement was involuntary.

The remaining contentions with respect to the suppression of the statements made by defendant, both before and after arrest, are lacking in merit and require no discussion. The Superior Court did not err in refusing to suppress the statements made by defendant.

The entry must be:

Judgment vacated.

All concurring.