**STATE of Maine**

**v.**

**Robert D. COTE.**

Supreme Judicial Court of Maine.

Argued March 11, 1986.

Decided April 4, 1986.

Janet T. Mills, Dist. Atty. (orally), Auburn, for plaintiff.

Berman, Simmons & Goldberg, P.A., Jennifer Nichols Ferguson (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ.

McKUSICK, Chief Justice.

After a jury trial, the Superior Court (Androscoggin County) convicted defendant Robert D. Cote of operating under the influence, 29 M.R.S.A. § 1312-B (Supp.1985–1986), a Class D crime, and sentenced him to ten days in the Androscoggin County Jail. On appeal, he asserts that the presiding justice made errors in instructing the jury and in imposing sentence; but we find no merit in those contentions. We affirm.

■ Defendant's first argument on appeal is that the Superior Court illegally increased his sentence because defendant exercised his constitutional right to a trial. A sentencing justice may exercise wide discretion in the sources and types of information used to assist him in determining the kind and extent of punishment to be imposed on a defendant within the limits fixed by law. *See State v. Farnham,* 479 A.2d 887, 890 (Me.1984). Nonetheless, "an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial." *Id.* at 891. "There is a clear-cut distinction between enhancing a sentence because the convicted defendant insisted on a trial and considering that fact along with others in assessing how real is defendant's claim of remorse at the time of sentencing." *Id.* at 893. In allocution before the sentencing justice, defendant expressed his regrets at having driven while he was drunk and said, "I hope it don't happen again." In appraising defendant's claim of remorse, the sentencing justice properly took into account the fact that defendant in practical effect admitted during his testimony every element of the crime with which he was charged: Defendant himself testified that he had drunk six or seven beers on the evening of his arrest; that he had been operating his car; and that he was at the time "feeling the effects of the alcohol." In addition, a breathalyzer test administered at the time of defendant's arrest showed him to have a blood alcohol content of 0.12%. On appeal defendant fails to demonstrate that the justice committed any abuse of discretion in giving little or no weight to defendant's belated expressions of remorse.

Defendant's second argument on appeal is that the presiding justice made remarks when he sent the jury back to continue deliberating that constituted reversible error because of their coercive effect on the jury's verdict. The presiding justice completed his charge to the jury, and the jury withdrew to deliberate, at 10:33 a.m. Shortly after noon, the jury returned to the courtroom to get answers to several questions. In the mid-afternoon at 2:50 p.m., it returned to the courtroom again and reported a "stalemate so to speak." The presiding justice instructed it to continue deliberating. In the course of those in-

structions he told the jurors that he was not permitted to release them merely because they had already deliberated for four hours. He went on to state, "Sometimes it does take a great deal of time, and there are thousands of other people that are performing the same task and having to do so in a like and lengthy manner." Defendant made a timely objection. Over an hour later, at 4:00 p.m., at a time early enough in the day to assure that no personal time pressures felt by individual jurors would have any obvious coercive effect, the jury brought back a verdict of guilty.

The supplemental remarks made by the presiding justice at 2:50 p.m. did depart from being the mere repetition of the original jury instructions that is suggested by the ABA Standards for dealing with a jury deadlock. *See* 3 ABA Standards for Criminal Justice, Standard 15–4.4(b) (2d ed. 1980).[1] The ABA Standard was adopted as "the recommended practice" by this court in *State v. White,* 285 A.2d 832, 838 (Me. 1972).[2] Nonetheless, a deviation from the ABA standard is not coercive *per se. See State v. Mahaney,* 437 A.2d 613, 618–19 (Me.1981). To hold otherwise would require us to overrule *State v. Mahaney,* as well as subsequent cases such as *State v. Quint,* 448 A.2d 1353, 1357 (Me.1982).

 Thus, the issue is whether the presiding justice's mid-afternoon remarks *in fact* had such a potential for coercing the jury into reaching a verdict that they constitute reversible error. As we have stated before, the "seminal point" of the ABA Standard is the balance between "the competing considerations of the desirability of a juror's reconsideration of his opinions and the need that his verdict accurately reflect his honestly-held beliefs." *State v. Quint,* 448 A.2d at 1355. It is the task of the presiding justice to strike that balance in his charge to the jury. In the case at

bar, such a balance was properly maintained. In his relatively brief mid-afternoon instruction the presiding justice reminded the jurors to "make every effort to listen carefully to what each other has to say," but in the same remarks he twice cautioned, "I don't want that to be taken as meaning that I feel you should change your position if you fully believe that that position is the position you should hold." As for the presiding justice's comment to the jury that there are "thousands of other people that are performing the same task and having to do so in a like and lengthy manner," we give it its most obvious meaning in the context: He was only informing the jurors that other juries often take four hours or longer to reach a verdict and that they could not stop deliberating merely because they wanted to. Therefore, upon reviewing the instructions given during the jury's deliberations, we find in fact no impermissible coercion of the jury into reaching a verdict.

In *State v. White,* 285 A.2d at 838, and again more recently in *State v. Quint,* 448 A.2d at 1357, we *recommended* the use in such circumstances of the ABA Standard.[3] We now *urge strict adherence* to that Standard so as to avoid the unnecessary risk of reversible error. No benefits from deviations from that Standard can justify imposing upon this court "the difficult task of weighing the coercive impact of such variations in particular circumstances." *Id.*

The entry is:

Judgment of conviction affirmed.

All concurring.

---

1. Present ABA Standard 15–4.4 was originally Standard 5.4 and is so cited in our prior cases. The texts of the differently numbered Standards differ only stylistically.

2. *See also* Alexander, *Manual of Jury Procedures and Instructions for Maine,* Instruction # 180, at 141–42 (1985).

3. *See also State v. Rusher,* 468 A.2d 1008, 1010 (Me.1983).