### STATE of Maine

#### v.

### Ernest Brian WEIDUL.

Supreme Judicial Court of Maine.

Argued June 4, 1993.

Decided July 13, 1993.

Michael Cantara, Dist. Atty., David Gregory (orally), Office of Dist. Atty., Alfred, for plaintiff.

William Shumaker (orally), Yarmouth, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Ernest Brian Weidul appeals from a Superior Court (York County, *Cole, J.*) judgment entered on a jury verdict convicting him of criminally threatening his father with a dangerous weapon, 17–A M.R.S.A. § 209 (1983). For the first time, on appeal, Weidul argues that the trial court fatally departed from the instructions that a trial court is authorized to give to a jury after it has commenced to deliberate. We are once again faced with the task of evaluating the effect of a departure from the ABA Standards for Criminal Justice § 15–4.4 (1980). Because we conclude that the trial court's departure from the ABA standard presents an unacceptable risk of an unfair trial, we vacate the judgment of the Superior Court.

In 1972, we "concluded" that the time had come for Maine courts to abandon the use of the *Tuey–Allen*[1] charge or any modified version thereof. *State v. White*, 285 A.2d 832, 838 (Me.1972). Because the *Tuey–Allen* charge is coercive and invades the province of the jury, we recommended against the use of the charge or any modified form thereof after the jury commenced to deliberate in any criminal case. *Id.* at 838. In its place, we adopted the ABA's standard that reads:

**Standard 15–4.4. Length of deliberations; deadlocked jury**

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto:

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, *if* it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

ABA Standards for Criminal Justice § 15–4.4 (1980).

▪ Due to repeated departures from the ABA standard we have had to revisit this issue over the years. *See e.g. State v. Heald*, 292 A.2d 200 (Me.1972) (reaffirming recommendations in *White* at 204); *Gould v. Bangor and Aroostook R.R. Co.*, 292 A.2d 837 (Me.1972) (admonition in *White* applies to civil as well as criminal trials); *State v. Quint*, 448 A.2d 1353, 1357 (Me. 1982) ("recommending" use of ABA standard); *State v. Rusher*, 468 A.2d 1008, 1010 (Me.1983) (noting our previous "strong" recommendations that ABA standards be utilized); *State v. Cote*, 507 A.2d 584, 586 (Me.1986) (urging "strict adherence" to ABA standard). Our use of progressively stronger language has failed to sufficiently dissuade departures from, or modifications to, the ABA standard. An erroneous instruction to a potentially deadlocked jury cuts to the heart of the criminal process and any convictions secured following such instructions are highly suspect. A departure from the ABA standard requires us to determine whether the modified charge equates to the ABA standard, and forces us to determine the effect the charge had on the deadlocked jury. "No benefits from deviations from [the ABA standard] can justify imposing [on] this Court the difficult task of weighing the coercive impact of such variations in particular circumstances." *Cote*, 507 A.2d at 586 (quotations omitted). Accordingly, we announce that departures from the ABA standard, if the subject of a proper objection, will be met by this court with summary reversal. This rule will serve to ensure defendants a fair trial and conserve judicial resources.

▪ A review of the trial court's charge in the instant case reveals that the charge violated several of the principles embodied in the ABA standard and skewed the carefully wrought balance that would have been achieved if the ABA standard had been strictly followed. Since no objection

**1.** Sometimes referred to as the "Allen", "Tuey", "8th Cushing" or "dynamite" charge.

was raised to the trial justice's language departing from the ABA standard, we review to determine "whether the offending instruction 'when reviewed with the charge as a whole constituted highly prejudicial error tending to produce manifest injustice.'" *See State v. Quint,* 448 A.2d 1353, 1355 (Me.1982) (*quoting State v. Mahaney,* 437 A.2d 613, 618–19 (Me.1981)).

We agree with Weidul that the court's instructions were erroneous in the following particulars:

1) The court's instructions failed to strike the crucial balance between the competing considerations of the desirability of a juror's reconsideration of his opinions in order to reach a verdict and the need that any verdict rendered accurately reflect honestly held beliefs, *see State v. Cote,* 507 A.2d 584, 586 (Me.1986);

2) The charge repeatedly emphasized the desirability of reaching a verdict while failing to properly note the countervailing, but no less important, requirement that an individual juror maintain his or her well-reasoned beliefs regardless of its effect on the ability of the jury to render a unanimous verdict, *cf.* ABA Standards for Criminal Justice § 15–4.4. (1980);

3) The instructions incorrectly and improperly suggested that the jurors would have to deliberate until they returned verdicts, and that there was no other alternative, *see id.;*

4) The court's statements to the effect that "there are only two possible verdicts here" are virtually indistinguishable from the instruction that "[y]ou have got to reach a decision in this case," that was condemned in *Jenkins v. United States,* 380 U.S. 445, 446 [85 S.Ct. 1059, 1060, 13 L.Ed.2d 957] (1965) (per curiam).

Weidul also contends that the instructions totally omitted paragraph (a)(ii) of the ABA standard and, as a result, the court's instructions failed to convey the implicit message contained in the ABA standard that "[a] jury, any number of juries, have a right to fail to agree." *See United States v. Flannery,* 451 F.2d 880, 883 (1st Cir.

1971). While this statement appears to be accurate, there are portions of the charge, when all three portions are viewed as a whole, that attempt to convey the required balance. The charge, however, does not approach the crucial balance embodied in the ABA standards and emphasizes the desirability of reaching a verdict without giving equal emphasis to each juror's obligation to maintain his or her honestly held beliefs and, thus, is unacceptably coercive, and constitutes "highly prejudicial error tending to produce manifest injustice." *See Quint,* 448 A.2d at 1355, 1357.

Weidul's other contentions, including the sufficiency of the evidence, are without merit and do not require further discussion.

The entry is:

Judgment vacated. Remanded to the Superior Court for proceedings consistent with the opinion herein.

WATHEN, C.J., and ROBERTS, GLASSMAN and DANA, JJ., concurring.

CLIFFORD, Justice, with whom COLLINS, J., joins, dissenting.

I agree with the Court that the trial court should use the A.B.A. standard instructions for lengthy deliberations and apparently deadlocked juries. *See State v. White,* 285 A.2d 832, 838 (Me.1972). I disagree, however, that the trial court's instructions in this case varied from the A.B.A. standards to such a degree that they constitute obvious error. Therefore, I respectfully dissent.

In instructing a jury that has demonstrated some difficulty in reaching a verdict, the court should encourage continued deliberation with a view to reaching an agreement, but that encouragement must be balanced with an instruction that a juror's honestly held beliefs should not be relinquished merely to reach a verdict. *See State v. Cote,* 507 A.2d 584, 586 (Me.1986) (purpose of A.B.A. standard is to strike balance between competing considerations of juror reconsidering his or her opinions and need that verdict accurately reflect honestly held beliefs) (citing *State v. Quint,* 448 A.2d 1353, 1355 (Me.1982)); *see*

*also* A.B.A. *Standards for Criminal Justice* § 15–4.4 (1980); D.G. Alexander, *Manual of Jury Procedures and Instructions for Maine,* Comment to Instruction # 201 at 8–9–8–12 (2d ed. 1990).

Before deliberations began in this case, the trial court instructed the jury that "you do have to decide the case for yourself. You should not give up a well-reasoned belief simply because you stand alone and want the case to end and go home. Nor should you worry about how long it takes you to reach a verdict. Some verdicts ... take a great deal of time." Again, after several hours of deliberation, the court used similar language in its reinstruction to the jury after they indicated difficulty in reaching agreement. At the end of the first day of deliberation, as the jury was leaving, the court gave the following instructions, not directed toward how the jury was to deliberate, but for administrative reasons and to caution the jury about discussing the case at home:

THE COURT: All right. I appreciate what you people have done here today and I know it's been a long day. At this point in time, what I would propose to do and what I intend to do is send you people home and have you come back tomorrow morning.

You haven't eaten. I am sure that people are getting on edge in there and it's a long day and I understand it's been a long day and I appreciate the effort you have made. What I propose to do is send you home at this point in time and ask you to come back tomorrow morning to return to deliberate until you have a unanimous verdict in both charges here.

I want to caution you not to discuss the matter with your family members at home. Don't allow anyone to talk to you about this. The decision you make [has] to be a decision of the twelve of you here in the jury room and you should not allow anyone to influence you. You shouldn't talk to the attorneys here or any of the witnesses.

The decision you have to make is here and it's a decision of twelve people and it requires input of each of you in that decision. So I propose I intend to send

you people home, but I want to caution you not to talk about the case at home. That will obviously be your natural reaction to do that. Don't do that or allow anyone to in anyway influence you as to what your ultimate decision is in this case.

There is one problem. They're taking the boiler apart here tomorrow, I understand, so it's supposed to be warmer outside. Dress warmly. I can't tell you how warm it's going to be in here, pretty cool here right now. Sometimes it's very hot here, but I would have jackets with you so that you will be warm. I don't know how bad it will be here tomorrow. Hopefully it won't be bad, but the potential is there for it to be cool here so I want to tell you in advance.

Again don't talk about the case and don't start deliberating here until all twelve of you are present tomorrow. I hope you don't think I'm being arbitrary or harsh, but this is the procedures that we follow in Maine and I am going to ask you—and I hope that you have a good evening and come back here fresh and are able to reach a unanimous decision tomorrow. Anything further from counsel?

Weidul raised no objection to any of the court's instructions. The jury returned the next day, resumed deliberations and reached a verdict before the end of the morning.

Because errors in a court's instructions to the jury are so easily correctable if they are called to the court's attention, M.R.Crim.P. 30(b) imposes on a party a positive duty to object to such instructions before the jury retires to consider the evidence. When there is a failure to so object, any claimed error advanced on appeal is reviewed under an obvious error standard. *State v. Mahaney,* 437 A.2d 613, 617 (Me. 1981); M.R.Crim.P. 52(b). In such a case, we will not disturb a conviction unless the " 'obviousness of the error and the seriousness of the injustice done to the defendant thereby are so great [that we] cannot in good conscience let the conviction stand.' " *State v. Billadeau,* 597 A.2d 414, 417 (Me.

1991) (quoting *State v. True*, 438 A.2d 460, 469 (Me.1981)).

In this case, both times that the court specifically directed the jurors' attention to and instructed them on the proper method of conducting their deliberations, it instructed them that they had to decide the case for themselves and that they should not give up their well-reasoned beliefs merely to reach a verdict. Those instructions struck the proper balance between the desirability of reaching a verdict and the need that the verdict reflect the honestly held beliefs of the jurors. *See Cote*, 507 A.2d at 586. Although the court did not use the *exact* language of the A.B.A. standards, when viewed in context and in their entirety, the instructions comport with the purpose and spirit of the standard. In my judgment, they certainly do not rise to the level of obvious or manifest error. *See Mahaney*, 437 A.2d at 618–19. I would affirm the convictions.