2008 ME 40

**STATE of Maine**

v.

**Daniel S. GANTNIER.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Dec. 11, 2007.
Decided: March 4, 2008.

**1192**

David J. Van Dyke, Esq., Hornblower Lynch Rabasco & Van Dyke, P.A., Lewiston, for Daniel Gantnier.

Leane Zainea, Dep. Dist. Atty., Belfast, for State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶1] Daniel S. Gantnier appeals from a judgment convicting him of one count of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E) (2007), entered by the Superior Court (Waldo County, *Studstrup, J.*) following a jury trial. Gantnier contends that the court's instructions to the jury to continue deliberating on all counts after the jury reported deadlock were impermissibly coercive because the court's instructions delivered shortly before the verdict omitted a reminder, previously given on two separate occasions, that each juror should maintain well-reasoned beliefs, regardless of the effect on the jury's ability to render a unanimous verdict. Because the court's instructions to the jury, viewed in their totality, disclose no impermissible coercion, we affirm the judgment.

## I. CASE HISTORY

[¶2] In 2005, Daniel S. Gantnier was indicted on nine counts of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(B) (2007), and eleven counts of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E). Two counts of unlawful sexual contact involved one female victim; the remaining counts involved one male victim. Before trial, the State dismissed eight of the counts regarding acts allegedly committed on the male victim. Evidence regarding the remaining twelve counts was presented at a two-day trial in January 2006 during which the two alleged victims and many other witnesses testified. Gantnier testified that he had not abused either victim.

[¶3] After closing arguments on the second day of trial, the court presented jury instructions to which there were no objections. The jury instructions included direction to consider each charge separately; to "decide the case for yourself, but

only after an impartial consideration of the evidence with the other jurors"; and not to "surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or for the mere purpose of returning a verdict." The instruction was consistent with the recommended instruction at section 6–64 of the *Maine Jury Instruction Manual.* *See* Alexander, *Maine Jury Instruction Manual* § 6–64 at 6–100 to 6–101 (4th ed.2007). At 10:00 A.M. the following day, January 26, the jury began its deliberations. The jury was given a verdict form listing each of the twelve counts and leaving spaces to check "Not Guilty" or "Guilty."

[¶ 4] During deliberations, specific portions of testimony were read back to the jury in response to jury requests. After 3:00 p.m. on the first day of the jury's deliberations, the jury foreperson sent the court a note indicating that the jurors were having difficulty reaching unanimity and asking what they should do. With agreement of the parties, the court sent the jury a note asking if it had reached a unanimous verdict on any of the counts. The foreperson of the jury then indicated that the jury had not reached unanimity on any of the counts.

[¶ 5] The parties agreed that the court should instruct the jury that, to reach a verdict on any count, all twelve jurors must agree that Gantnier was not guilty or that he was guilty. Before dismissing the jury for the evening, the court delivered the following instructions, which are consistent with section 15–4.4 of the American Bar Association's STANDARDS FOR CRIMINAL JUSTICE (2d ed.1980) and section 8–6 of the *Maine Jury Instruction Manual* (4th ed.2007):

> First of all, the amount of time that you've spent in deliberations so far is not unusual for this type of case with the number of counts that there are and the amount of evidence. Responsible deliberation requires a thorough discussion of all issues and points of view, and the fact that you've taken the amount of time that you already have today suggests to me that you're doing your job responsibly.
>
> Now, as I indicated in my closing charge, the verdict you reach must represent the considered judgment of each juror. In order to return a verdict your verdict must be unanimous. Whether the verdict is guilty or not guilty, all twelve of you must agree. Which I think answers a second question that was presented. It is your duty as jurors to talk with one another and to deliberate with a view to reaching an agreement, if you can do so without sacrificing individual judgment. *Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.*
>
> In the course of your deliberations keep an open mind. Do not hesitate to reexamine your own views and change your opinion if you are convinced that it is erroneous. *But do not surrender your honest belief as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.* Remember at all times you are not partisans. You're not attorneys. You're not counsel for either side. You're judges of the facts. Your sole interest is to determine the facts based upon the evidence in this case.

(Emphasis added.)

[¶ 6] The jury began deliberations again at 9:00 a.m. the following day. Just before 11:00 a.m., the jury foreperson sent another note to the court that said, "[W]e are not able to come to a unanimous deci-

sion on any of the counts against Mr. Gantnier. Signed, [Foreperson]." The court proposed to counsel that it would instruct the jury to review the verdict form one more time and go through it count by count, indicating whether the jury had reached a verdict on any of the counts. Counsel for Gantnier objected that the instruction would deviate from the ABA STANDARDS and the *Maine Jury Instruction Manual.* Gantnier's counsel also requested that the court poll the jurors individually to determine if they were at an impasse.

[¶ 7] The court did not think that point had been reached yet. Over Gantnier's objection, the court instructed the jury as follows:

First of all I think we all certainly respect and thank you for the amount of time and effort that you put into your deliberations as this jury so far. I know you've been very serious and diligent in those deliberations. Let me also comment, though, as I said yesterday afternoon just before you went home, that although you have spent a considerable amount of time deliberating, it's still not an unusual amount of time considering the number of counts and the number of different issues that you have to deal with. Second, I want to remind you that you do have a duty to talk with one another and to deliberate, but not as partisans or advocates for one side or the other in this particular case.

Now, let me return to a question that was raised in your—one of your messages that came out yesterday afternoon. It had to do with the nature of the verdict. In order to return a verdict as to each or any of the counts, that verdict must be unanimous. Whether the verdict is not guilty or guilty, all twelve of you must agree on that verdict. However, you do not have to have

a verdict—have reached a verdict as to all of the counts in order to report that you have a verdict. That's why the verdict form is set forth in the way it is, with spaces to indicate the verdict as to each of the various counts.

Now, I am going to ask you to return to the jury room to give it another try. I'm going to make a suggestion that you take the jury form again and start at the top, review the entire form count by count, and indicate for your purposes your progress as you go through each one of those counts. If you can reach a unanimous verdict as to one or more of the various counts, you may report that fact. But do not report or indicate the vote that there is on any of the nonunanimous counts. If you are still not able to reach a verdict on any of the counts, you should report that fact, again not commenting on what the vote was on any of the counts.

[¶ 8] The jury then returned to deliberate further. Within minutes, the jury requested reinstruction about evidence and reasonable doubt. The court reinstructed the jury about the nature of evidence, reasonable inferences, circumstantial versus direct evidence, credibility, expert testimony, and the meaning of "beyond a reasonable doubt." About a half-hour later, the jury returned a verdict of guilty on one count alleging that Gantnier had had unlawful sexual contact with the male victim and reported that it could not reach a verdict on any of the other counts.

[¶ 9] After a sentencing hearing, the court entered a judgment on the one count of unlawful sexual contact, sentencing Gantnier to thirty months in prison, with all but thirteen months suspended, and four years of probation. Gantnier then brought this appeal.

## II. DISCUSSION

[¶ 10] Gantnier argues that the court erred in delivering an instruction that asked the jury to return for further deliberations after the jury reported deadlock on the second day of deliberations because the instruction was coercively suggestive that the jury should reach a verdict on at least one count. This point is resolved by review of the challenged jury instruction, which explicitly contemplated that the jury could fail to reach a verdict on any count: "If you are still not able to reach a verdict on any of the counts, you should report that fact, again not commenting on what the vote was on any of the counts."

[¶ 11] Gantnier also argues that, if the court was going to instruct the jury to continue deliberating, it should have repeated its prior instruction that each juror maintain well-reasoned beliefs regardless of the effect on the jury's ability to reach a unanimous verdict. Gantnier argues that the ABA STANDARDS FOR CRIMINAL JUSTICE and the *Maine Jury Instruction Manual* require this instruction.

[¶ 12] Gantnier is correct that both the ABA STANDARDS, section 15–4.4, and the *Maine Jury Instruction Manual,* section 8–6, recommend that when a jury has reported a deadlock, any instruction to continue deliberations should include advice that (1) each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors, and (2) no juror should surrender his or her honest belief as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict. 3 ABA STANDARDS FOR CRIMINAL JUSTICE § 15–4.4 (2d ed.1980); Alexander, *Maine Jury Instruction Manual* § 8–6 at 8–11 (4th ed.2007). Here, Gantnier's jury was instructed in accor-

dance with these requirements twice: once before the jury began its deliberations and once immediately before the jury was recessed at the end of the first day of deliberations because the jury had made its first report of difficulty in reaching a verdict on any count. The follow-up instruction given after the jury had been deliberating approximately two more hours on the second day of deliberations did not explicitly include this language. It did, however, remind the jurors that they had "a duty to talk with one another and to deliberate, but not as partisans or advocates for one side or the other in this particular case."

[¶ 13] We review jury instructions as a whole for prejudicial error, to ensure that the instructions informed the jury correctly and fairly. *State v. Gauthier,* 2007 ME 156, ¶ 14, 939 A.2d 77, 81; *State v. Martin,* 2007 ME 23, ¶ 5, 916 A.2d 961, 964. In our review, we consider the effect of the instructions as a whole and the potential for juror misunderstanding. *Gauthier,* 2007 ME 156, ¶ 14, 939 A.2d at 81. Recognizing that a review of jury instructions must consider them in their totality, we must decide if the effect of an indisputably proper instruction given after a jury has first reported difficulty in reaching a verdict is vitiated by a failure to repeat all of the elements of the proper instruction in a follow-up instruction given later in the jury's deliberations.

[¶ 14] We adopted the jury charge from the ABA STANDARDS because it "provides the crucial balance between the desirability of reaching a verdict and the desirability of ensuring that the verdict accurately reflects the honestly held beliefs of individual jurors." *State v. Kaler,* 1997 ME 62, ¶ 14, 691 A.2d 1226, 1231. Although we have had occasion to opine on when it is appropriate for the court to give

the deadlock instruction, *id.* ¶¶ 14–16, 691 A.2d at 1231–32, and whether it is permissible for a court to offer to read back testimony or repeat instructions in conjunction with the deadlock instruction, *State v. Braddick*, 2002 ME 63, ¶¶ 6–7, 794 A.2d 641, 643, we have not yet had the occasion to determine whether or what type of further instruction is permitted after the proper deadlock instruction has been given.

[¶ 15]   Here, the jury reported difficulty reaching a verdict.   The court instructed the jury in accordance with the proper standards, and in the follow-up instruction, informed the jury that it could report inability to reach a verdict on any or all counts, after the jurors had considered each count independently.   Absent are any coercive elements that run counter to the purposes of the ABA STANDARDS.   The court did not instruct the jurors that they had to reach a verdict, that they had a choice of only guilty or not guilty, or that they would be required to continue deliberating until some verdict was reached. *Compare with State v. Weidul*, 628 A.2d 135, 137 (Me.1993).

[¶ 16]   In its reinstruction to the jury in the · matter before us, the court did not repeat the caution, already given twice, that each individual juror should not surrender his or her honest belief as to the weight or effect of evidence solely because of the opinions of other jurors or for the mere purpose of returning a verdict. However, in the past we have held that failure to give that caution is coercive only when the instruction given did include (1) a mandate to reach some verdict, *id.*, (2) an instruction to change an opinion if convinced that opinion was in error, *State v. Quint*, 448 A.2d 1353, 1355–56 (Me.1982), or (3) a warning about the cost and consequences of a failure to reach a verdict, *State v. Rusher*, 468 A.2d 1008, 1009–10 (Me.1983).

[¶ 17]   Nonetheless, Gantnier, relying on *Weidul*, urges us to vacate and require that the same ABA STANDARDS instruction be given to a jury each and every time that the court communicates with a jury that has asked questions regarding the lack of unanimity.   Such mind-numbing repetition is neither advisable nor required.   What is required is that the jury receive the appropriate instruction before it begins deliberating, that it receive the ABA STANDARDS instruction when it first identifies a possible deadlock, and that any additional instructions are noncoercive and are framed in such a way that the jury understands that a deadlock is not unacceptable to the court.   If substantial time passes between reinstructions to a potentially deadlocked jury, a court should reassert the ABA admonition.

[¶ 18]   In the context of the present case, considering the instructions the jury was given in their totality, the court's instructions were not coercive.   They were consistent with the ABA STANDARDS, which permit the court to require continued deliberations and to give or repeat an instruction "[i]f it appears to the court that the jury has been unable to agree."   3 ABA STANDARDS FOR CRIMINAL JUSTICE § 15–4.4(b) (2d ed.1980).   Moreover, the court repeated the instruction that "you do have a duty to talk with one another and to deliberate, but not as partisans or advocates for one side or the other in this particular case."   Although the court did not repeat, for a third time, the entire instruction that a juror should not surrender an honestly held belief for the purpose of reaching a verdict, the jurors had been admonished not to surrender their honestly held beliefs at the end of the previous day's deliberations; the court did acknowledge the possibility that the jury would not reach unanimity on some or all of the counts and provided instructions for that

eventuality; and the court in no way suggested that a deadlock would represent failure. Although it might have been preferable for the court to reiterate the instruction that a juror should not surrender an honestly held belief for the purpose of reaching a verdict, the court did not err in providing the follow-up instruction as it did. Considering the jury's request for reinstruction on evidence and reasonable doubt, and the end result in which the jurors remained deadlocked on eleven of the twelve counts before them, we cannot infer that the challenged instruction coerced the jury to reach unanimity on any one count.

[¶ 19] The reinstruction and return of the jury to further deliberations was the court's proper attempt to determine whether the jury was genuinely deadlocked. *See State v. Therriault*, 485 A.2d 986, 999–1000 (Me.1984) ("Because of the importance of the defendant's right to be free from double jeopardy, the trial justice has a duty to assure himself that the jury is *genuinely* deadlocked before declaring a mistrial...." (Quotation marks omitted.)); *see also State v. Landry*, 600 A.2d 101 (Me.1991). In continuing deliberations to determine whether the jury was genuinely deadlocked, the court did not require the jury to deliberate an unreasonably long time. According to Gantnier's counsel, deliberations up to that point had only lasted "some seven hours." *See State v. Commeau*, 438 A.2d 454, 460 (Me.1981) (affirming decision to permit further deliberation after jury had deliberated for roughly ten hours); *see also* 3 ABA STANDARDS FOR CRIMINAL JUSTICE § 15–4.4(b) (2d ed.1980).

The entry is:

Judgment affirmed.