## COMMONWEALTH *vs.* JESSE G. FOSTER.

No. 90-P-171.

Middlesex. January 7, 1991. - May 16, 1991.

Present: BROWN, DREBEN, & LAURENCE, JJ.

Further appellate review granted, 410 Mass. 1103 (1991).

*Constitutional Law*, Trial by jury. *Jury and Jurors. Judge. Practice, Criminal*, Mistrial, Deliberation of jury.

At a criminal trial the judge unduly encroached on the jury's authority by instructing them to return partial verdicts in the midst of deliberation, in circumstances where the jury had been given and had chosen the option of returning simultaneous verdicts at the conclusion of all their deliberations. [591-595]

INDICTMENTS found and returned in the Superior Court Department on August 23, 1988.

The cases were tried before *Hiller B. Zobel*, J.

*Daniel J. Harrington* for the defendant.

*M. Jane Walsh*, Assistant District Attorney, for the Commonwealth.

LAURENCE, J. The defendant Foster was tried to a jury on indictments charging rape of a child under sixteen years of age; assault on a child under sixteen with intent to commit rape; and two counts of violation of a G. L. c. 209A restraining order. He seeks reversal of his convictions on the charges of assault with intent to rape and one count of violation of a restraining order.[1] His grounds of appeal are (1) prosecutorial misconduct in the form of repeated introduction of inadmissible evidence and (2) prejudicial intrusion by the trial judge into the province of the jury. The alleged intrusion occurred when the judge effectively ordered the jury, in the middle of their deliberations, to return whatever separate verdicts they had reached. The judge had originally in-

---

[1]The defendant was acquitted on the other two charges.

structed that the jury could, at their option, return all four verdicts simultaneously rather than separately, and they had in fact elected to do so. We find sufficient merit in Foster's second point to reverse his convictions.[2]

At 3:00 P.M. on May 1, 1989, after five days of trial, the judge charged the jury. His instructions included the following remarks (emphases added):

> "You will have what's· called a verdict slip, you'll have four of them . . . one for each [offense charged. On each of them circle either guilty or not guilty] . . . . Your foreperson should sign. Your foreperson should date. Don't make any other marks on the slip. *If you have occasion to take more than one vote and need to tally the votes, do it on some other piece of paper. . . . I suggest . . . that when you go out to the jury room . . . you allow each of you to speak first before taking any votes, but that's just a suggestion and you can do whatever you want. It's entirely up to you.*
>
>                          . . .
>
> "[L]et me say also [that] there is no Guiness Book of World Record's entry for the jury that took the longest to deliberate and there is no NC2A indoor record for the jury that came in with a verdict the fastest. *You take whatever time, long or short, is necessary for deciding this case. You may, if you wish, but you need not, report a verdict as you reach each verdict. You may decide that you want ·to wait and announce all of them at once. It's up to you.*"

The jury then retired at 3:15 P.M. to deliberate. They continued their deliberations for the rest of the afternoon of May 1 and resumed for several hours upon reconvening May 2. At some point during the afternoon of May 2, the jury

---

[2]Because of our ruling on Foster's second ground of appeal, we need not address his claim of prosecutorial misconduct. We assume that the problems or misunderstandings which gave rise to that claim in the first proceeding can and will be obviated by properly framed pretrial motions and rulings governing the scope and admissibility of evidence.

sent a question to the judge through their foreman[3] concerning the dates two of the offenses were alleged to have been committed. After answering the jury's question, the judge engaged the jury foreman in the colloquy reproduced in the margin.[4] The effect of the colloquy was to instruct the foreman to have the jury return whatever verdicts they had reached. Following the jury's retirement, Foster's counsel objected to the judge's action. He pointed out that the jury had originally been given a choice as to the mode of their deliberations. Since they had, according to the foreman, elected to consider all the charges together so as to bring in all four verdicts simultaneously, he contended that the judge's instruction to return partial verdicts "may affect the manner in which they are deliberating in this case." The judge rejected

---

[3]The record does not reveal at what time the jury ceased their deliberations on May 1, 1989, or how long they had been deliberating after recommencing on May 2 when they sent this question to the judge.

[4]THE COURT: "Now, Mr. Foreman, if you would please just answer this question 'Yes' or 'no.' Do you or do you not — I'll ask it another way. Do you have a verdict as to any indictment or any count of any indictment?"

FOREMAN JUROR: "Yes, we do."

THE COURT: "Very Well. I will ask you to return a verdict on that indictment or indictments, that count or counts. What you should do is to take the notebook — Do you have the jury book with you? All right. If you'll return to the jury room and take, bring with you into the courtroom those, any indictment or indictments or parts of an indictment as to which you have a unanimous verdict and then you will come into the courtroom, please, and we'll take the return of so much as you have reached a unanimous verdict and if you require a short amount of time now to complete your work on all of the indictments, you may at your discretion do that, but if you feel that you are going to have additional discussion, I want you to feel free to have additional discussion, but I merely wish you to bring back whatever indictments you have completed. Am I clear?"

FOREMAN JUROR: "You are clear and may I ask the Court a question?"

THE COURT: "Yes."

FOREMAN JUROR: "The Court indicated when it charged the jury that the jury had the choice of returning one as they occurred or waiting until all four were complete, the foreperson asked the jury at the outset of deliberations what their collective decision was. Their collective decision was all four. Am I permitted to ask them or, in other words, the Court is simply ordering us to do that?"

THE COURT: "I don't like using the word ordered, but I do wish you to return whatever verdicts you have now. All right. You may return to the jury room."

counsel's argument, relying on the language of Mass.R.Crim.P. 27(b), 378 Mass. 897 (1979),[5] and stating that:

> "I regard it as a matter of discretion on the evening of the second day of deliberation[6] when there is a substantial possibility that the jury may have to disperse and return again for further deliberation, that the court take from the jury whatever verdicts it has and that is the basis for my decision in accordance with the rule."

Following an unspecified (but apparently short) period of time thereafter, the jury, at 4:55 P.M. on May 2, 1989, returned verdicts of guilty on the charges of assault with intent to rape a child and one count of violation of a c. 209A restraining order. The judge at that point invited the jury to continue deliberating as long as they desired into the evening on the remaining two charges, but the foreman expressed the jury's desire to reconvene in the morning. The next day, May 3, 1989, the jury deliberated until 4:50 P.M when they announced not guilty verdicts on the indictments charging rape of a child and one count of violation of a restraining order.

We have not been referred to any Massachusetts decision on point and our research has not disclosed any. Nonetheless, our review of the circumstances attending the jury's deliberations leads us to agree with Foster's argument on appeal. Reversal is required because the trial judge did unduly, however unintentionally, encroach on the jury's authority. One of the basic principles of our Constitution is the fundamental, indeed "sacred," right of trial by jury in criminal prosecutions. See Massachusetts Declaration of Rights, arts. 12 and 15;

---

[5]The rule states in relevant part: "If there are two or more offenses . . . tried together, the jury may, with the consent of the judge at any time during its deliberations return or be required by the judge to return a verdict or verdicts with respect to the . . . charges as to which a verdict has been reached; and thereafter the jury may in the discretion of the judge resume deliberation."

[6]The record does not disclose the time of day the judge made this statement, but there ensued a brief recess following which the jury returned at 4:55 P.M. to announce the two guilty verdicts.

*Commonwealth* v. *Bellino*, 320 Mass. 635, 639, 640, cert. denied, 330 U.S. 832 (1947). "Whatever tends in any appreciable degree to impair the essentials of the right must be struck down." *Id.* at 639. That the jury be free from undue judicial pressure, contemporaneous or subsequent, has long been held to be one of the essentials of the right to trial by jury in a criminal case. *Commonwealth* v. *Anthes*, 5 Gray 185, 209-210 (1855).

There is a distinction between proper judicial guidance of the jury and improper judicial action likely to coerce. *Commonwealth* v. *Hebert*, 379 Mass. 752, 755 (1980). Although the line separating the two is not always clear, doubts about its precise location must be resolved in favor of jury freedom. Thus, trial courts have been enjoined to act "with care to avoid all coercion and any indication [to the jury] of judicial bias or pressure." *Commonwealth* v. *Rollins*, 354 Mass. 630, 638 (1968). The courts must use "the utmost caution . . . to avoid invading the province of the jury." *Commonwealth* v. *Connor*, 392 Mass. 838, 844 (1984). See also *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365, 370 (1977). Any judicial conduct that "has a tendency toward [jury] coercion" should be avoided, even if the risk to trial fairness is "a slight one." *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 99 (1973).

The *Rodriquez* decision, although focusing on the issue of a *Tuey* charge to a deadlocked jury,[7] restated the values preserved by these principles of judicial restraint in dealing with juries: the "free and unfettered exercise of individual judgment and expression of conscience which is at the very core of the jury system" and "the give and take of group deliberation, a basic attribute of the jury system often expressed as a major characteristic justifying its continuance in our judicial system" (citations omitted). *Id.* at 99-100.

Considering "[t]he total effect of what took place," we think that the judge's colloquy with the foreman "created appreciable danger of . . . improper invasion of the province of

---

[7]See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851), and discussion in *Commonwealth* v. *Rodriquez, supra* at 97-103.

the jury . . . ." *Commonwealth* v. *Gonzalez*, 28 Mass. App. Ct. 10, 15 (1989). The jury were initially instructed by the judge that they were free to take as long as they wished in their deliberations, to take tentative votes, to take multiple votes, to reconsider prior votes, and to defer finality in reporting their votes until agreement had been reached on all four charges. They had chosen the option of reserving final decision "until all four were complete" (see note 4, *supra*). We can reasonably infer that any votes they had taken up to the time of the judge's discussion with the foreman may have been provisional, possibly "the result of a temporary compromise in an effort to reach unanimity." *A Juvenile* v. *Commonwealth*, 392 Mass. 52, 56 (1984).

The judge's expression to the foreman of his desire for immediate return of the verdicts the jury had reached may well have prejudiced Foster. It could have been understood by the jurors as a requirement that they abandon any doubts which they may have privately entertained about Foster's guilt on the charges thus far discussed but which they would have been prepared to express in subsequent reconsideration after further assessment of all the evidence bearing on all the charges. The judge's professed reluctance to use the word "order" did not effectively mitigate the impact of his abrupt and unexplained change of the rules of deliberation. By overriding the foreman's expressed reservations, he created "a strong likelihood that the jury may have given special weight to the judge's . . . communication," *Commonwealth* v. *Webster*, 391 Mass. 271, 277 (1984), as an effective command. It was perceivable, moreover, as an order not merely to return the verdicts seriatim but also to return immediately whatever verdicts had received unanimous, even if tentative, votes without further deliberation on those charges.

"A jury should not be precluded from reconsidering a previous vote on any issue . . . ." *A Juvenile* v. *Commonwealth*, *supra* at 56 (citation omitted). By insisting on the return of partial verdicts which he had earlier informed the jury could be reconsidered at any time prior to unanimity on all four charges, the judge effectively precluded such reconsideration

and thereby "overc[a]me . . . the will [of the jury] by the weight of his authority," in a manner that amounted to "placing the judicial thumb on the scale . . . ." *Commonwealth* v. *Diaz*, 19 Mass. App. Ct. 29, 34, 35 (1984) (citation omitted).[8]

We think that the following observations by the United States Court of Appeals for the Second Circuit regarding the sensitive dynamics of jury deliberations are relevant to the instant situation:

> "The difficulties of a jury's task in reaching unanimous verdicts as to . . . multiple charges counsel against judicial attempts to structure the course of jury deliberations . . . . [J]uries should have considerable latitude in determining for themselves the structure of the deliberative process . . . . The jury's discretion should extend to the timing of reporting its verdicts . . . . [If jurors] are required to return a partial verdict, there is a risk that some jurors might mistakenly permit a tentative vote to become an irrevocable final vote and forgo the opportunity to gain new insights concerning the evidence [as it is reassessed in light of their subsequent deliberations]." *United States* v. *DiLapi*, 651 F.2d 140, 146-147 (2d Cir. 1981), cert. denied, 455 U.S. 938 (1982) (discussing multiple charges against several defendants).

We have no doubt that any coercion of the jury was unintended, that the judge acted with proper motives, and that he reasonably relied on what appeared to be the literally permissive text of rule 27(b). We must, however, appraise the action complained of not by the good intentions behind it but by its probable impact on the jury's process and the trial's

---

[8] It is, of course, not possible to say with certainty what part the judge's conduct played in the jury's immediate return of the two guilty verdicts. The jury's subsequent verdicts of not guilty on the remaining charges, however, including the most serious of the indictments, after a day's further deliberation and the necessary assessment of the credibility of the same two prosecution witnesses whose testimony underlay the earlier charges, indicate the potential prejudice to Foster's cause.

fairness. The broad discretion to require partial verdicts under rule 27(b) is not exercised properly when, as here, the jury have been given and have chosen the option of returning simultaneous, rather than separate or partial, verdicts at the conclusion of all their deliberations.[9] Extracting partial verdicts in the unusual circumstances of this case strayed beyond the legitimate bounds of judicial guidance and trial management.

*Judgments reversed.*

*Verdicts set aside.*

---

[9]The utility of partial verdicts is apparent in long or complicated trials of multiple issues or defendants when prolonged jury deliberations are likely or have occurred. By taking a partial verdict, the judge hedges against the possibility of juror illness or death or prejudicial publicity. Although the judge here alluded to such possibilities, there was in fact no indication that any of those risks was threatened in this case. There was no suggestion from the jury that they were having any difficulty, or doing anything other than simply deliberating with care. The judge's stated reason for demanding the partial verdicts, see *supra* at 591, was not, in this situation, persuasive and did not arise out of any exigency. It is arguable that rule 27(b) was inappropriately invoked here for the additional reason that no final verdicts had in fact "been reached," only tentative verdicts the jury had been led to believe were subject to later revision.