COMMONWEALTH *vs.* JESSE G. FOSTER.

Middlesex. October 8, 1991. - January 30, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Jury and Jurors. Judge. Practice, Criminal,* Deliberation of jury, Instructions to jury, Argument by prosecutor, Cross-examination by prosecutor.

At a criminal trial the judge's reversal of his instruction to the jury on the manner in which their verdicts were to be returned did not, on the facts in the case, impermissibly invade the jury's deliberations. [763-766]

At a criminal trial in which the judge ordered the parties to refrain from exploring the bases for mutual restraining orders that had been issued against the defendant and the mother of the victim, no prejudice to the defendant resulted from the prosecutor's inquiring about the incident that led to the issuance of the restraining order against the defendant where, in response to the defendant's attempt to raise an inference of an ongoing social relationship between the defendant and the mother, the testimony the prosecutor sought in his inquiry was relevant and admissible to refute that inference, and it was within the judge's discretion to permit the inquiry; where the testimony elicited as to the reason for the restraining orders was to a great extent cumulative and any adverse effect was dissipated by the judge's instruction to the jury; and where objection by the defendant to the inquiry was not timely and was therefore waived. [766-768]

INDICTMENTS found and returned in the Superior Court Department on August 23, 1988.

The cases were tried before *Hiller B. Zobel*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Daniel J. Harrington* for the defendant.

*James W. Sahakian*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court the defendant was convicted of assault with intent to commit rape

of a child under sixteen years of age, and of one count of
violating a restraining order issued under the provisions of
G. L. c. 209A (1990 ed.).[1] The Appeals Court reversed,
and we granted further appellate review. We affirm the con-
victions entered in the Superior Court. In reversing the de-
fendant's convictions the Appeals Court reasoned that the
judge impermissibly invaded the jury's deliberations. *Com-
monwealth* v. *Foster*, 30 Mass. App. Ct. 588 (1991). The
Appeals Court did not reach the defendant's other argument
of prosecutorial misconduct.

1. *Intrusion upon the jury's prerogative.* The rules of
criminal procedure allow a trial judge to require the jury to
return a verdict or verdicts with respect to any charges on
which they have reached a verdict.[2] The issue in this case is
whether the trial judge lost that discretion because of the
way he presented the case to the jury. In his charge to the
jury the judge included the following remarks:

> "You will have what's called a verdict slip, you'll have
> four of them . . . one for each [offense charged. On each
> of them circle either guilty or not guilty] . . . . Your
> foreperson should sign. Your foreperson should date.
> Don't make any other marks on the slip. If you have
> occasion to take more than one vote and need to tally
> the votes, do it on some other piece of paper . . . . I

---

[1]The defendant was found not guilty on a charge of rape of a child
under sixteen, and a second count of violating a restraining order.

[2]Massachusetts Rule of Criminal Procedure 27 (b), 378 Mass. 897
(1979), provides as follows:

> "(b) Several Offenses or Defendants. If there are two or more of-
> fenses or defendants tried together, the jury may with the consent of
> the judge at any time during its deliberations return *or be required
> by the judge* to return a verdict or verdicts with respect to the de-
> fendants or charges as to which a verdict has been reached; and
> thereafter the jury may in the discretion of the judge resume delib-
> eration. The judge may declare a mistrial as to any charges upon
> which the jury cannot agree upon a verdict; provided, however, that
> the judge may first require the jury to return verdicts on those
> charges upon which the jury can agree and direct that such verdicts
> be received and recorded." (Emphasis added.)

suggest . . . that when you go out to the jury room . . .
you allow each of you to speak first before taking any
votes, but that's just a suggestion and you can do
whatever you want. It's entirely up to you.

. . .

"[L]et me say also [that] there is no Guiness Book of
World Record's entry for the jury that took the longest
to deliberate and there is no NC2A indoor record for
the jury that came in with a verdict the fastest. You
take whatever time, long or short, is necessary for de-
ciding this case. You may, if you wish, but you need
not, report a verdict as you reach each verdict. You
may decide that you want to wait and announce all of
them at once. It's up to you."

On the second day of its deliberations the jury sent a ques-
tion to the judge who, after responding, engaged in the fol-
lowing colloquy:

THE COURT: " . . . Now, Mr. Foreman, if you would
please just answer this question "yes" or "no." . . . Do
you have a verdict as to any indictment or any count of
any indictment?"

FOREMAN JUROR: "Yes, we do."

THE COURT: "Very well. I will ask you to return a ver-
dict on that indictment or indictments, that count or
counts. What you should do is to take the notebook —
Do you have the jury book with you? All right. If you'll
return to the jury room and take, bring with you into
the courtroom those, any indictment or indictments or
parts of an indictment *as to which you have a unani-
mous verdict* and then you will come into the court-
room, please, and we'll take the return of so much as
you have reached *a unanimous verdict* and if you re-
quire a short amount of time now to complete your

work on all of the indictments, you may at your discre-
tion do that, but if you feel that you are going to have
additional discussion, *I want you to feel free to have
additional discussion,* but I merely wish you to bring
back *whatever indictments you have completed. Am I
clear?*"

FOREMAN JUROR: "You are clear and may I ask the
Court a question?"

THE COURT: "Yes."

FOREMAN JUROR: "The Court indicated when it
charged the jury that the jury had the choice of re-
turning one as they occurred or waiting until all four
were complete, the foreperson asked the jury at the out-
set of deliberations what their collective decision was.
Their collective decision was all four. Am I permitted to
ask them or, in other words, the Court is simply order-
ing us to do that?"

THE COURT: "I don't like using the word ordered, but I
do wish you to return whatever verdicts you have now.
All right. You may return to the jury room." (Emphasis
added.)

After a brief recess the jury returned the guilty verdicts
which are the subject of this appeal.

The defendant argues and the Appeals Court agreed that
the judge's reversal of his instruction on the manner in which
the jury verdicts be returned may have affected the jury's
deliberations and encroached on the jury's authority. It is, of
course, true that whatever impairs the essentials of the right
to jury trial must be struck down, *Commonwealth* v. *Bellino,*
320 Mass. 635, 639, cert. denied, 330 U.S. 832 (1947), and
that trial courts must be careful to avoid invading the prov-
ince of the jury or any conduct which has a tendency toward
jury coercion. See *Commonwealth* v. *Connor,* 392 Mass. 838,
844 (1984); *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 99

Commonwealth *v.* Foster.

(1973); *Commonwealth* v. *Rollins*, 354 Mass. 630, 638 (1968); *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365, 370 (1977).

It is also true, however, that members of a jury are presumed to obey the instructions of the judge. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 232 (1989); *DeWitt* v. *Wells*, 294 Mass. 65, 66 (1936); *Stricker* v. *Scott*, 283 Mass. 12, 14 (1933); *Allen* v. *Boston Elevated Ry.*, 212 Mass. 191, 194 (1912); *Rudberg* v. *Bowden Felting Co.*, 188 Mass. 365, 366 (1905). See also *Parker* v. *Randolph*, 442 U.S. 62, 73 (1979). Here, the judge's additional instructions explicitly required the jury to return only those verdicts which were unanimous and complete. He took pains to make sure the foreman understood his directive. To conclude that the jury could have felt pressure to convert provisional verdicts against the defendant into final ones and to abandon all doubts that they may have privately entertained runs counter to the clear instructions of the judge and amounts to mere speculation without any support in the record. We conclude that, on the facts in this case, the judge did not impermissibly invade the jury's deliberations.

2. *Prosecutorial misconduct.*

Before trial, the judge stated that during the Commonwealth's case-in-chief the parties should not explore the bases for the mutual restraining orders which had been issued against the defendant and the mother of the victim.[3] On

---

[3]The exact language follows:

THE COURT: "I tell you, Mr. [Prosecutor], I think it would be the ·fairest to do it this way. During the Commonwealth's case in chief we will not hear any testimony about the bad blood, if that's what we can call it, colloquially speaking, there may have or may not have existed between the parties other than the fact that a restraining order was obtained."

PROSECUTOR: "Yes, Your Honor."

THE COURT: "And the two restraining orders, of course, will be Exhibits. Now, at the close of the defendant's evidence, if the defendant decides to put in any evidence, a matter which of course is entirely open to Mr. [Defense Counsel] even though he's given me a list of witnesses, if at that point when the defendant has rested it

cross-examination of the mother, the defendant attempted to raise an inference of an ongoing social relationship between the defendant and the mother. On redirect the prosecutor asked the mother about the reasons for the restraining order. Eighteen questions later, the judge, sua sponte, stopped the prosecutor from pursuing this line of questioning. The judge, however, refused to strike the testimony elicited to that point. The defendant, indicating that he was "just going to object," moved for a mistrial. The judge denied the motion.

The other instance of alleged misconduct occurred during cross-examination of the defendant. Defendant testified that he and the mother had no problems, and that they had a continuous intimate relationship. The prosecutor again inquired about the incident that lead to the issuance of the restraining order against the defendant. The defendant objected; the question was allowed but never answered. Later on the defendant again objected, arguing that the prosecutor was going into the background of the restraining order, and consequently moved for a mistrial. The judge denied the motion.

While it is true that a promise by the Commonwealth to the defendant must be kept, see *Commonwealth v. Harris*, 364 Mass. 236, 238 (1973), we conclude that no promise existed here to be broken. There was, of course, an order of the judge. A judge, however, has a right to vary his rulings any time prior to closing, as long as such variance does not cause harm to a party. *Catania* v. *Emerson Cleaners, Inc.*, 362 Mass. 388, 390 (1972). *Ferris* v. *Ray Taxi Serv. Co.*, 259 Mass. 401, 405 (1927). Here, in response to the dynamics of trial the judge's rulings modified his pretrial order. The relationship between the mother and the defendant was specifically put in issue by the defendant during his cross-examina-

---

appears to me that I should favor an application from you to bring in by way of rebuttal some of the past history, then we can recall [the mother of the victim] and bring it in then. But I think the fairest thing to do is not to bring it in at this point, that is, during the Commonwealth's case in chief. So, you'll please instruct [the mother of the victim] as to that."

tion of the mother. The evidence elicited by the prosecutor was relevant and admissible to refute the inference of an ongoing social relationship sought to be established by the defendant. See *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973). See also *Commonwealth* v. *Scott*, 408 Mass. 811, 817-818 (1990); *Commonwealth* v. *Travis*, 408 Mass. 1, 13 (1990). It was within the judge's discretion, therefore, to modify his original pretrial ruling to permit redirect examination on a subject raised by the defendant on cross-examination rather than limit the prosecutor to raising the matter in rebuttal as his original order had contemplated. The cross-examination of the defendant was outside the scope of the original order. Again the prosecutor's question was admissible in view of the direct examination of the defendant.

Furthermore, the judge had already ruled that the restraining orders themselves were admissible. The testimony elicited as to the reason for the orders was, therefore, to a great extent cumulative and any adverse effect was dissipated by the judge's instructions to the jury.[4] With this in mind no prejudice could have resulted from the prosecutor's questions to the defendant on cross-examination.

Finally, the defendant's objection during redirect was not timely and was therefore waived. See *Commonwealth* v. *Cadwell*, 374 Mass. 308, 311 (1978). See also *Commonwealth* v. *Baptiste*, 372 Mass. 700, 706 (1977) (objection coming after a question was answered was not timely); *Boyle* v. *Columbian Fire Proofing Co.*, 182 Mass. 93, 98-99 (1902)

---

[4]"Now, you've heard a lot about this relationship that went on between [the mother of the victim] and the defendant and you've heard a lot about years of history of a relationship between the two of them. Ladies and gentlemen, we are not here to try what happened five years ago between them. We are not here to go into who got a restraining order against whom and who was right and who was doing what to whom and who was going to the Probate Court. We're not here to talk about those issues. What we are here for is to decide what happened on two specific dates last summer of 1988, and there are three issues in this case."

(failure to make timely objection is a waiver to both the question and the answer).

*Judgments affirmed.*