COMMONWEALTH *vs.* ALBERT F. LAFONTAINE
·    (and five companion cases[1]).

No. 91-P-242.

Suffolk. December 10, 1991. - May 15, 1992.

Present: ARMSTRONG, JACOBS, & GILLERMAN, JJ.

*Larceny. Extortion. Constitutional Law,* Self-incrimination, Confrontation
of witnesses. *Witness,* Self-incrimination. *Practice, Criminal,* Verdict,
Deliberation of jury, Instructions to jury, Argument by prosecutor.
*Jury and Jurors. Judge.*

At the trial of indictments for larceny and for using or threatening to use
the power or authority as police officers to extort money, there was sub-
stantial evidence of guilt and the defendants' motions for required find-
ings of not guilty were correctly denied. [530-531]

At the trial of two police officers on indictments, the judge properly ad-
vised a prosecution witness with respect to his Fifth Amendment rights
and, in the circumstances, there was no error in the judge's making his
remarks and permitting the witness to exercise his privilege in the pres-
ence of the jury. [531-534]

At a criminal trial there was no error in the trial judge's ordering the jury
to return verdicts on those indictments on which unanimous verdicts
had been reached and to continue deliberation on the remainder. [534-
535]

At a criminal trial there was no error in the judge's instructions on the
elements of larceny or on the Commonwealth's burden of proof. [535-
536]

At a criminal trial there was no error in the prosecutor's closing argument,
viewed in the context of the entire argument and the judge's instruc-
tions, that required reversal of the defendants' convictions [536-537],
and other claimed errors were either proper argument or merely a rhe-
torical device [537].

INDICTMENTS found and returned in the Superior Court
Department on June 8, 1989.

The cases were tried before *Hiller B. Zobel,* J.

[1]Two of the companion cases are against LaFontaine and three are
against Jose R. Pomales.

*Willie J. Davis* for Albert F. LaFontaine.

*Francis L. Robinson* for Jose R. Pomales.

*Robert J. McKenna, Jr.*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. After trial before a Superior Court jury, the defendants were found guilty on indictments charging them with larceny of $3,980 and of using and threatening to use their powers as Boston police officers to extort money.[2] On appeal, the defendants claim the judge erred by: (1) denying their motions for required findings of not guilty; (2) advising a prosecution witness, in the presence of the jury and during cross-examination, of his right not to incriminate himself; (3) ordering the jury to return verdicts before the completion of deliberations; and, (4) improperly instructing the jury. The defendants also claim that the prosecutor's argument was improper and that the trial errors, when considered collectively, dictate that their convictions be reversed. We reject the defendants' claims and affirm the convictions.

1. *Sufficiency of the evidence.* Viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), the evidence of the defendants' guilt was substantial. The cumulative testimony of six of the approximately nine persons who were in a Dorchester apartment established that the defendants entered the apartment at 11:45 P.M. on January 17, 1989, announcing they were police officers; with guns drawn, they handcuffed Joseph Taylor and Howard Taylor and conducted a search of the apartment and its occupants which resulted in a seizure of, among other things, forty-two grams of cocaine, various drug paraphernalia and approximately $4,000 in cash; while the money was being seized, the defendant LaFontaine said to Joseph Taylor, "This is hardly enough," and told Howard Taylor that he wanted $5,000 from him and $5,000 from Joseph Taylor; when Howard Taylor indicated

---

[2] General Laws c. 265, § 25 (1988 ed.), provides in pertinent part that "any police officer . . . who verbally . . . maliciously and unlawfully uses or threatens to use against another the power or authority vested in him, with intent thereby to extort money . . . shall be punished . . . ."

he could get money from a friend, his sister was permitted to leave for the purpose of obtaining that money; after she returned with $960, LaFontaine took the money and told Joseph Taylor that $5,000 was not enough to let two people go; and, the defendants arrested Joseph Taylor but removed the handcuffs from Howard Taylor and released him. Other evidence indicated that the defendants were in the four-room apartment for approximately two hours and forty minutes and the defendant Pomales, in his official incident report, stated that the defendants turned $400 over to the Boston police department along with the seized drugs and paraphernalia.

While there was no testimony that Pomales spoke words of extortion, there was ample evidence of his actions, from which the jury could infer that he was aware of LaFontaine's extortionate efforts, shared with him the intent to extort and actively assisted in the crime. See *Commonwealth* v. *Pope*, 406 Mass. 581, 585 (1990). There was also evidence that Pomales, apart from, and prior to, any extortion, took $3,020[3] in currency from Howard Taylor with intent to steal it and that LaFontaine knew of this theft and was a joint venturer in the larceny.

2. *Invocation of Fifth Amendment privilege in presence of jury.* Counsel for the defendants vigorously cross-examined Howard Taylor in an attempt to discredit his testimony, verified by two other witnesses, that he had $3,000 in currency on his person when the defendants entered the apartment. In the course of responding to questions concerning the sources of his income, Howard Taylor testified that he performed computer programming work for an attorney for which he received "under the table compensation." After repeating that characterization, and testifying that he was paid for the work, he was asked by counsel, "And how much did he pay you?" At that point the judge stated:

---

[3]There was evidence that Howard Taylor had $3,000 in a jacket pocket and $20 in a pants pocket. The indictment amount ($3,980) apparently encompassed that money together with the $960 which LaFontaine took from Howard Taylor's sister.

> "It's my duty to inform you that you are now under oath and you may be making a statement which, with respect to the Internal Revenue Code and the cognate State statutes, may place you in criminal jeopardy."

The witness then inquired whether he was required to answer, and the judge responded:

> "You are entitled to assert your right not to incriminate yourself under both the Federal and State constitution[s]."

The witness then stated that he refused to answer. No objection or motion was made by defense counsel, who continued to examine concerning other claimed sources of income. On the next day, after completion of Howard Taylor's testimony, defense counsel moved to strike his testimony. The motion was denied.

When the judge, without the urging of counsel, intervened in the examination of the witness to advise him of his constitutional right not to incriminate himself, he acted well within his discretion and in accordance with a "commendable practice." See *Commonwealth* v. *Slaney*, 345 Mass. 135, 141-142 (1962); *Taylor* v. *Commonwealth*, 369 Mass. 183, 192 (1975); *Commonwealth* v. *Crawford*, 12 Mass. App. Ct. 776, 779 (1981), and cases cited. "[T]he Judge is present as the embodiment of the Constitution, charged with the firm duty to see that the rights of all are upheld — the defendants, the witnesses and the public. Whether and to whatever extent it may be the duty of the trial judge to caution a witness about his Fifth Amendment rights, a careful one never hesitates." *United States* v. *Wilcox*, 450 F.2d 1131, 1139 (5th Cir. 1971), cert. denied, 405 U.S. 917 (1972).

The question, therefore, is not the propriety of the judge's intervention, but whether he erred, in the circumstances, in making his cautionary remarks and permitting Howard Taylor to exercise his privilege in the presence of the jury. As a general proposition, it is the better practice to excuse the jurors and to dispense the constitutional advice out of their

hearing. See *United States* v. *Agee*, 597 F.2d 350, 362 (3d Cir.), cert. denied, 442 U.S. 944 (1979); McCormick, Evidence § 137, at 513-515 (4th ed. 1992). Thus, the risk of impermissible inference by the jury is greatly reduced. "Nevertheless, as has been observed, convictions are not vulnerable to reversal in all cases where witnesses assert Fifth Amendment privileges in the face of a jury." *Commonwealth* v. *Martin*, 372 Mass. 412, 414 (1977). Compare *Commonwealth* v. *Penta, ante* 36, 46 n.5 (1992). It has even been held to be error to refuse to force a prosecution witness to assert his Fifth Amendment privilege before the jury. *United States* v. *Kaplan*, 832 F.2d 676, 684 (1st Cir. 1987), cert. denied, 485 U.S. 907 (1988). See McCormick, Evidence § 137, at 512 n.13 (4th ed. 1992). The test, in cases other than those involving questions of prosecutorial misconduct, is whether the "witness's demurral is thought to add the 'critical weight' that brings about the verdict of guilty." *Commonwealth* v. *Martin, supra* at 414, quoting from *Namet* v. *United States*, 373 U.S. 179, 187 (1963).

While the exercise by a witness of his Fifth Amendment rights has the potential of significant effect upon a jury, *Commonwealth* v. *Hesketh*, 386 Mass. 153, 157 (1982), we discern no adverse impact upon the defendants here. Given the evidence of Howard Taylor's involvement in illegal drug activity, and his admitting to numerous defaults as a criminal defendant, any effect on his credibility which might derive from his resting on his rights would be both minimal and collateral. His testimony that he possessed $3,000 in currency was thoroughly attacked during extensive cross-examination addressed to his sources of income and the benefits he may have received from the Commonwealth in exchange for his testimony. Moreover, he had not claimed that the $3,000 in question represented earnings. He testified that the money had been paid to him by his former wife as a part of a real estate transaction.

The defendants suggest that the judge, by openly describing his intervention as a "duty," somehow vouched for the witness and implied to the jury that he believed that Howard

Taylor had received substantial "under the table" compensation. The fact that experienced defense counsel did not perceive the judge's intervention or remarks as being sufficiently critical to warrant an immediate objection diminishes the force of the argument. See *Commonwealth* v. *Grace*, 381 Mass. 753, 760 (1980). In any event, the witness minimized any effect of his claim of privilege by shortly thereafter testifying that he made "a couple of dollars" on another computer programming job. The absence of significant prejudice to the defendants arising from Howard Taylor's reliance on his Fifth Amendment rights undermines their further claim that the exercise of those rights by a prosecution witness violated their rights of confrontation under the Sixth Amendment to the United States Constitution. See *Commonwealth* v. *Turner*, 393 Mass. 685, 690 (1985).

3. *Ordering jury to return partial verdicts.* The judge had instructed the jurors prior to their deliberations that they had the option of reporting when they had reached a verdict on any indictment and that he was reserving to himself "the option of asking you at any particular point have you reached a verdict on any indictment and then asking you to come in and return a verdict as to that indictment . . . ." After the jurors had deliberated for approximately four hours, they asked to be reinstructed on the concept of joint venture. The judge, after discussing further instruction with counsel and ordering the jury to be returned to the court room, immediately inquired: "Mr. Foreman, the first question I want to ask you is have you reached a verdict on any of the indictments?" When the foreman responded in the affirmative, the judge stated, "We will take the verdict on those indictments as to which you have reached a verdict." The jury then returned verdicts on three of the ten indictments before them.[4] Verdicts were reached on the remaining indictments on the

---

[4]The jury found the defendant LaFontaine guilty on two indictments charging him with extortion pursuant to G. L. c. 265, § 25, and not guilty on a charge of indecent assault and battery on one of the apartment occupants.

next day of deliberations.[5] The defendants claim that the judge, acting without consultation with counsel, impermissibly invaded the jury's prerogative. The holding in *Commonwealth* v. *Foster*, 411 Mass. 762 (1992), decided after argument in this case, resolves the issue. In that case, after the judge responded to a question, he asked the jury to return any unanimous verdicts which had been reached, notwithstanding the foreman's indication that the jury previously had chosen not to return any verdict until all were complete. After a brief recess, the jurors returned verdicts on two of the four indictments before them. The Supreme Judicial Court held that the judge did not act impermissibly. *Id.* at 766. Here, the judge's action was less intrusive upon the jury's prerogative and well within his discretion to require the return of any verdict that had been reached. See *Commonwealth* v. *Foster, supra* at 763; Mass.R.Crim.P. 27(b), 378 Mass. 897 (1979).

4. *Judge's instructions.* The defendants, relying on a question from the jury as to whether the amount charged in the indictments for larceny ($3,980) must be proved, concluded that the jurors must have found a different amount to have been stolen, and argue, without support from the record, that they were somehow hampered in the preparation of their defense. The judge correctly responded to the question that the exact amount alleged to have been stolen was not critical and that all that is required to convict was proof, along with the other elements of larceny, that the subject of the larceny was more than $250. See *Commonwealth* v. *Kelly*, 24 Mass. App. Ct. 181, 186 (1987); G. L. c. 277, § 24.

Also, the defendants isolate one paragraph of the judge's instructions and claim that it impermissibly diluted the Commonwealth's burden of proof. The focus of that argument is the instruction that "an inference has to favor the govern-

---

[5]The jury found the defendant LaFontaine not guilty on indictments charging indecent assault and battery and larceny of personal property, and guilty of larceny of more than $250 from Howard Taylor. It found the defendant Pomales not guilty of larceny of personal property, but guilty on indictments charging larceny of more than $250 from Howard Taylor and extortion pursuant to G. L. c. 265, § 25.

ment over any competing inference before you can use that conclusion in deciding the case." Even if this instruction, in isolation, could be construed to require less than proof of guilt beyond a reasonable doubt, it should not be viewed separately and out of context. *Commonwealth* v. *Whooley*, 362 Mass. 313, 319 (1972). *Commonwealth* v. *Adorno*, 407 Mass. 428, 432 (1990). *Commonwealth* v. *Azar*, *ante* 290, 309-310 (1992). The judge's instructions must be considered in their entirety. *Commonwealth* v. *Gibson*, 368 Mass. 518, 527-528 (1975). *Commonwealth* v. *McInerney*, 373 Mass. 136, 148-149 (1977). Here, in addition to faithfully reciting the language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), the judge, on at least twelve occasions in his instructions, emphatically referred to the Commonwealth's burden as being proof beyond a reasonable doubt. Any realistic assessment of the probable impact of the entire charge upon the jury, *Commonwealth* v. *Richards*, 384 Mass. 396, 399-400 (1981), leads to the conclusion that the judge's instructions did not erroneously diminish the Commonwealth's burden.

5. *The prosecutor's argument.* Defense counsel argued to the jury that a police report filed by Pomales told a different story from that of the prosecution witnesses. The prosecutor, in turn, suggested to the jurors during argument that they should inquire as to whether the report was accurate or "simply a ruse." The report indicated that the defendants were permitted entry into the apartment after they presented themselves to Joseph Taylor on the street outside the apartment as potential customers for $1,000 in drugs. In challenging that version, the prosecutor, without basis in the evidence, argued that the officers did not have $1,000. Upon completion of the prosecutor's argument, the defense counsel objected to the reference to the $1,000 but made no request for a curative instruction. The judge stated that he thought "the reference was passing and was not at all stressed." The prosecutor's error occurred in the midst of a sarcastic and cynical analysis of various aspects of the police report. Viewed in the context of the entire argument, see *Common-*

*wealth* v. *Kozec*, 399 Mass. 514, 516-517 (1987), and the judge's customary admonition not to take closing arguments as evidence, this solitary comment was unlikely to have influenced the jury to the point of requiring reversal of the convictions. *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 316 (1973). *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223 (1983).

Defense counsel also objected to the prosecutor, in the course of argument, stating "I don't like drug dealers" and using the words "I submit" in the course of his remarks. The defendants argue that these constitute impermissible interjections of personal opinion. See S.J.C. Rule 3:08, PF 13(b), 382 Mass. 802 (1981). We agree with the judge that the reference to "drug dealers" was "within the limits of zealous advocacy." Also, the statement was not directed "to the truth or falsity of any testimony or evidence or the guilt of the defendant." *Ibid.* The prosecutor's use of the expression, "I submit," viewed contextually, was nothing more than a rhetorical device utilized to request that certain inferences be drawn. See *Commonwealth* v. *Gaeten*, 15 Mass. App. Ct. 524, 527 (1983); *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 223-224 (1991).

The defendants assert that the prosecutor made another reference to facts not in evidence or misstated the evidence.[6] Not only is the objection based on a strained reading of the prosecutor's words but it was not brought to the judge's attention. It is therefore not entitled to appellate review; in any event, the questioned remarks, in context, were collateral to the central issue and did not create a substantial risk of mis-

---

[6]The prosecutor had argued: "My brother argues that Joe Taylor should be here as a defendant and not the two defendants who are here before you. I submit to you that in our system of justice unless the evidence, drugs or whatever, is seized legally, the State, the Commonwealth in this case, doesn't have a case. You ask yourself what happened that night. You ask yourself if these two individuals were acting in a lawful way or whether or not these two individuals were abusing their authority."

carriage of justice. *Commonwealth* v. *Marangiello*, 410 Mass. 452, 465 (1991).

*Judgments affirmed.*